181 Cal.App.4th 956 (2010)
104 Cal. Rptr. 3d 403
In re ANTHONY MARIO WATSON on Habeas Corpus.
No. D055404.
Court of Appeals of California, Fourth District, Division One.
February 2, 2010.
*958 Todd William Burns, under appointment by the Court of Appeal, for Petitioner Anthony Mario Watson.
Edmund G. Brown Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Anthony Da Silva, Deputy Attorney General, for Respondent State of California.

OPINION
McINTYRE, J.
Two recent cases, In re Gomez (2009) 45 Cal.4th 650 [88 Cal.Rptr.3d 177, 199 P.3d 574] (Gomez) and Butler v. Curry (9th Cir. 2008) 528 F.3d 624 (Butler), held that Cunningham v. California (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] (Cunningham) applies retroactively in collateral review of judgments that became final before Cunningham and after Blakely v. Washington (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (Blakely). This case presents the question whether Cunningham applies on *959 collateral review of a judgment that became final before Cunningham but after Apprendi v. New Jersey (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (Apprendi)that is, whether Apprendi established a new rule of law for purposes of retroactivity analysis. We conclude that it did and grant the petition.

FACTUAL AND PROCEDURAL BACKGROUND
In April 1999, a jury convicted petitioner Anthony Mario Watson of murder, robbery, kidnapping, assault with a firearm, and false imprisonment. (People v. Watson (July 12, 2001, D034448) [nonpub. opn.] (Watson); we take judicial notice of the records of this court (Evid. Code, §§ 452, subd. (d) & 459, subd. (a)).) Among other things, the jury found true allegations that Watson personally used a firearm in the commission of all the offenses. In October 1999, the court sentenced him to 55 years to life. It imposed the upper term of 10 years for the firearm use enhancement to murder in count 1 "based on the callousness of the use, the manner and style of the execution," the upper term of eight years for kidnapping in count 3 based on premeditation, and the upper term of 10 years for the firearm use enhancement to kidnapping in count 3 "based upon the involvement of minors in the position of leadership." (Cal. Rules of Court, former rule 421(a).)
The United States Supreme Court decided Apprendi on June 26, 2000.
Watson appealed to this court and filed two petitions for writ of habeas corpus, each on grounds different from those raised in the petition now before us. (Watson, supra, D034448.) On July 12, 2001, we reversed Watson's conviction for false imprisonment, concluding that it was a necessarily included offense of kidnapping. We affirmed the judgment in all other respects, and denied the habeas corpus petitions. The partial reversal did not require resentencing. (Watson, supra, D034448.) The California Supreme Court denied review of Watson's direct appeal in September 2001.
In October 2001, Watson filed a petition for writ of habeas corpus in the United States District Court for the Southern District of California raising the same six claims he presented in the state habeas corpus petitions. When it became apparent that an evidentiary hearing was required on the ineffective assistance claim relating to Watson's alibi, the court appointed Federal Defenders of San Diego, Inc., to represent him. Watson's counsel raised trial counsel's "dismal performance" apart from his handling of the alibi defense and asked the court to consider trial counsel's cumulative ineffectiveness. The district court denied Watson's petition in November 2004.
*960 In December 2004, Watson appealed to the Ninth Circuit. Nearly two years later in September 2006, the Ninth Circuit affirmed the district court's holding that trial counsel was not ineffective for failing to interview White and Yard, two potential alibi witnesses. At the same time, it remanded the case to the district court to develop the record regarding the reasonableness of trial counsel's failure to interview Douglas and Larose, two other potential alibi witnesses. The Ninth Circuit also held that Watson had not exhausted his claim that "cumulative errors rendered trial counsel's performance deficient" and dismissed that claim without prejudice.
On January 8, 2007, Watson requested a stay and abeyance of the federal proceedings so he could return to state court to raise the nonalibi issues that the Ninth Circuit held were not exhausted. The Attorney General opposed the request. The district court did not hold an evidentiary hearing on the ineffective assistance issue with respect to potential alibi witnesses Douglas and Larose; nor did it rule on the request for stay and abeyance until February 27, 2009. Meanwhile, Watson's counsel took the unexhausted claims back to state court.
The United States Supreme Court decided Cunningham on January 22, 2007.
Still represented by Federal Defenders, Watson filed a petition for writ of habeas corpus in San Diego Superior Court on June 7, 2007. He raised the claims the Ninth Circuit held had not been exhausted. Watson also claimed for the first time that "his sentence violates the rule set forth in Apprendi ... as made clear in Cunningham ...." On August 27, 2007, the superior court issued an order to show cause in order to address claims of ineffective assistance of counsel and violations of Brady v. Maryland (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194] (Brady). It denied the petition as to the sentencing issues. On October 23, 2008, after the superior court denied relief on the remaining claims, Watson filed an original petition for habeas corpus in this court. (See In re Hochberg (1970) 2 Cal.3d 870, 873-874, fn. 1 [87 Cal.Rptr. 681, 471 P.2d 1].) On April 7, 2009, we denied habeas corpus relief on Watson's claims of ineffective assistance and Brady violations. Watson filed a petition for writ of habeas corpus on those issues in the California Supreme Court on May 8, 2009, which the court denied.
In our April 2009 order, we invited Watson to raise the sentencing claims again in superior court based on new law. The order read in part: "The petition is denied without prejudice to refiling in the trial court for reconsideration of petitioner's claim of sentencing error under Apprendi v. New Jersey[, supra,] 530 U.S. 466 and Cunningham v. California[, supra,] 549 U.S. 270. (See In re Gomez[, supra,] 45 Cal.4th 650; Butler v. Curry[, supra,] 528 F.3d 624.)"
*961 Watson filed a new petition for writ of habeas corpus in superior court on April 7, 2009, seeking resentencing based on the rationale of Gomez and Butler. Watson argued that because the result in Cunningham was dictated by Apprendi, and the United States Supreme Court decided Apprendi before Watson's conviction was final, Cunningham should apply retroactively to reduce the upper terms to midterms in his case. The superior court rejected that argument and the alternative claim that Cunningham announced a new, "watershed" rule that should be applied to his case.
On July 1, 2009, Watson filed the original petition which is now before us, raising the constitutional claims, and asking us to reduce his upper term sentences to the middle term. We issued an order to show cause why that relief should not be granted.

DISCUSSION
(1) Apprendi holds that "`any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.'" (Apprendi, supra, 530 U.S. at p. 476.) Watson maintains that Apprendi established a new rule of constitutional procedure which "explicitly foretold the demise of California's Determinate Sentencing Law" in the later decision in Cunningham. Because his conviction was still on direct appeal when Apprendi was decided, Watson argues that the upper terms imposed by the court in his casebased on sentencing factors not found true by a jury beyond a reasonable doubtmust be reduced to no more than the middle term. We agree.

I. Watson's Claim of Sentencing Error Is Timely

Relying on In re Robbins (1998) 18 Cal.4th 770 [77 Cal.Rptr.2d 153, 959 P.2d 311] (Robbins) and In re Clark (1993) 5 Cal.4th 750 [21 Cal.Rptr.2d 509, 855 P.2d 729] (Clark), the Attorney General argues that Watson's petition is untimely and successive. It is undisputed that Watson filed a series of habeas corpus petitions following his conviction in 1999, but as we explain, the sentencing issue is properly before us.
(2) A successive petition which presents additional claims that could have been presented in an earlier collateral attack on the judgment is, of necessity, a delayed petition. (Clark, supra, 5 Cal.4th at p. 781.) To avoid the bar of untimeliness with respect to petitions filed after close of briefing on direct appeal, "the petitioner has the burden of establishing (i) absence of substantial delay, (ii) good cause for the delay, or (iii) that the claim falls within an exception to the bar of untimeliness. [¶] Substantial delay is measured from *962 the time the petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim." (Robbins, supra, 18 Cal.4th at p. 780; see also Clark, supra, 5 Cal.4th at p. 781.) A claim that is substantially delayed without good cause, and therefore untimely, will be considered on the merits if the petitioner demonstrates, among other things, "that the petitioner was convicted . . . under an invalid statute." (Robbins, supra, 18 Cal.4th at p. 781.)
(3) To the extent the Attorney General's untimeliness argument is based on the claim Watson waited until June 2008more than a year after Cunninghamto collaterally challenge his sentence, we reject it out of hand. The record shows that Watson attacked his sentence for the first time in the habeas corpus petition filed in June 2007.
We also conclude that Watson has shown good cause for any delay in seeking habeas corpus relief based on Cunningham and Apprendi. The Attorney General does not contradict Watson's representation that although Cunningham was decided in January 2007, he could not immediately file a habeas corpus petition raising the sentencing issue. Watson asserts that he was awaiting the district court's ruling on the evidentiary hearing on claims of ineffective assistance and his request for stay and abeyance. "After a few months of waiting . . . [Watson's] counsel decided to proceed back to state court with the unexhausted issues . . . ." He also included the sentencing claim because Cunningham had rendered California's determinate sentencing law unconstitutional.
In any event, Watson is relieved from any claim of untimeliness because, as we explain, he was sentenced under an unconstitutional statute. (Robbins, supra, 18 Cal.4th at p. 780.)

II. Apprendi's Bright-line Rule Applies to Watson's Claim
Watson contends that his upper term sentences for kidnapping and two firearm use enhancements violated the rule set forth in Apprendi. The Attorney General responds that Apprendi did not dictate the holding in Cunningham, which was "essentially a California-specific application of Blakely . . . ." We conclude Watson is entitled to relief.
(4) A United States Supreme Court decision which establishes "new law" applies "only to state court judgments not yet final at the time of the decision . . . ." (Gomez, supra, 45 Cal.4th at p. 654, citing Teague v. Lane (1989) 489 U.S. 288, 301 [103 L.Ed.2d 334, 349, 109 S.Ct. 1060] (Teague).) Teague defines "a new rule as a rule that `breaks new ground,' `imposes a new obligation on the States or the Federal Government,' or was not `dictated *963 by precedent existing at the time the defendant's conviction became final.'" (Saffle v. Parks (1990) 494 U.S. 484, 488 [108 L.Ed.2d 415, 424, 110 S.Ct. 1257], original italics (Saffle).) In Saffle, the Supreme Court observed: "The explicit overruling of an earlier holding no doubt creates a new rule; it is more difficult, however, to determine whether we announce a new rule when a decision extends the reasoning of our prior cases." (Ibid.)
(5) Gomez and Butler addressed the specific question whether Cunningham applied retroactively to judgments that became final before Cunningham but after Blakely. (Gomez, supra, 45 Cal.4th at p. 653; Butler, supra, 528 F.3d at pp. 628, 631-632.) Those cases determined that Cunningham did not create new law but simply applied Blakely to California's sentencing scheme. (Gomez, supra, 45 Cal.4th at pp. 657-658 [Cunningham "did not extend or modify the rule established in Blakely"]; Butler, supra, 528 F.3d at p. 636 ["Cunningham did not add `"any new elements or criteria for"' determining when a state statute violates the Sixth Amendment."].) Although the broader retroactivity question was not before it, the Butler court concluded that "[t]aken together" the United States Supreme Court's Sixth Amendment case law starting with Apprendi "firmly established that a sentencing scheme in which the maximum possible sentence is set based on facts found by a judge is not consistent with the Sixth Amendment." (Butler, supra, 528 F.3d at p. 635.)
The United States Supreme Court acknowledged in Blakely that invalidation of the Washington sentencing scheme was compelled by Apprendi's "bright-line rule" which gave "intelligible content to the right of jury trial." (Blakely, supra, 542 U.S. at pp. 305, 307-308.) By equating the maximum sentence authorized by statute with the sentence authorized by the facts submitted to a jury and proven beyond a reasonable doubt, Apprendi put California on notice that its determinate sentencing law violated the Sixth Amendment. (Apprendi, supra, 530 U.S. at pp. 482-483, 494.) The impact of this change in law was not lost on the dissenters in Apprendi. Justice O'Connor observed that "[t]he principle . . . would apply . . . to all determinate-sentencing schemes in which the length of a defendant's sentence within the statutory range turns on specific factual determinations . . . ." (Id. at p. 544 (dis. opn. of O'Connor, J.).) She continued, "the Court does not say whether these schemes are constitutional, but its reasoning strongly suggests that they are not." (Id. at pp. 550-551 (dis. opn. of O'Connor, J.).) Justice Breyer agreed with O'Connor that "the majority's rule create[d] serious uncertainty about the constitutionality of [determinate sentencing statutes] and about the constitutionality of the confinement of those punished under them." (Id. at p. 565 (dis. opn. of Breyer, J.).)
*964 The Attorney General argues Watson's reliance on Apprendi is misplaced because (1) Apprendi involved a sentencing enhancement and not "a higher term in a sentencing range" as in Watson's case; (2) the Apprendi court affirmed trial judges' right to exercise sentencing discretion; (3) it was not until Blakely that the United States Supreme Court defined "statutory maximum" for Apprendi purposes; and (4) Cunningham was new law, a "California-specific" application of Blakely, and not dictated by the earlier Sixth Amendment cases.
(6) There is no merit in these arguments. As the subsequent Sixth Amendment cases demonstrate, the rule set forth in Apprendi applied equally to sentencing enhancements and determinate sentencing schemes. Moreover, when addressing trial judges' historical exercise of sentencing discretion, the Apprendi court cautioned: "We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretiontaking into consideration various factors relating both to offense and offenderin imposing a judgment within the range prescribed by statute. . . . [O]ur periodic recognition of judges' broad discretion in sentencing . . . has been regularly accompanied by the qualification that that discretion was bound by the range of sentencing options prescribed by the legislature." (Apprendi, supra, 530 U.S. at p. 481, original italics.) Finally, we reject the Attorney General's suggestion that a new rule of constitutional law is created each time a general rule is applied to a discrete circumstance. (See Butler, supra, 528 F.3d at p. 638.) As the court stated in Butler, "Apprendi, Blakely, and [United States v. Booker (2005) 543 U.S. 220 [160 L.Ed.2d 621, 125 S.Ct. 738]] made `courts throughout the land' aware that sentencing schemes that raise the maximum possible term based on facts not found by a jury violate the constitutional rights of defendants. [Citation.] No principles of comity or federalism would be served by refusing to apply this rule to functionally indistinguishable state sentencing schemes on collateral review. Cunningham thus did not announce a new rule of constitutional law and may be applied retroactively on collateral review." (Butler, supra, 528 F.3d at pp. 638-639.) Because the road to Cunningham leads back to Apprendi's bright-line rule, the same rationale applies in the case before us.

DISPOSITION
The judgment is reversed in part. The case is remanded with directions to modify the sentence by striking the upper terms imposed for the firearm use enhancements in counts 1 and 3 and for kidnapping in count 3, and to *965 resentence in accordance with People v. Sandoval (2007) 41 Cal.4th 825, 845-847 [62 Cal.Rptr.3d 588, 161 P.3d 1146]. The court is also directed to forward the modified abstract of judgment to the Department of Corrections and Rehabilitation.
McConnell, P. J., and Aaron, J., concurred.