Filed 5/8/13  P. v. Schwenk CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ERIC SCHWENK,<br><br>        Defendant and Appellant. | A129685<br><br>(Humboldt County<br> Super. Ct. No. CR-085455) |

Defendant was convicted following a second jury trial of two counts of lewd acts upon a child (Pen. Code, § 288, subd. (a)), and admitted that he suffered a prior conviction of the same offense for purposes of sentence enhancement pursuant to Penal Code sections 667.51, subdivision (a), and 667, subdivisions (b) through (i).[1]  He was sentenced to an aggregate term in state prison of 30 years.  In this appeal he claims that double jeopardy principles barred retrial of the prior conviction allegations, his admission of the prior conviction was invalid, imposition of the five-year enhancements for the prior conviction under sections 667, subdivision (a), and 667.51, subdivision (a), was error, and an upper term for the conviction of lewd acts upon a child was improper.

We conclude that double jeopardy did not attach to retrial of the prior conviction, and defendant's admission of the prior conviction at his second trial was knowing and voluntary.  No sentencing error occurred in the imposition of an upper term for the

---

[1] All further statutory references are to the Penal Code.

conviction of lewd acts upon a child, or the five-year enhancement under 667.51, subdivision (a). The trial court erred by imposing of a five-year enhancement under section 667, subdivision (a), as defendant was neither charged with nor admitted that allegation. The judgment must be modified to strike the five-year section 667, subdivision (a), enhancement. In all other respects we affirm the judgment.

## STATEMENT OF FACTS[2]

Defendant was convicted of lewd acts committed in 2002on Bryce B., the son of defendant's "girlfriend" Christie B.[3] Bryce was then 10 years old, and lived primarily in Eureka with Christie and defendant. Bryce had a "very trusting" relationship with defendant, and considered him "like a second father." Defendant often cared for Bryce at night while Christie worked.

One night in 2002, Bryce was in the bedroom normally occupied by defendant and Christie, sleeping on his side, facing away from defendant. Christie was not present. Bryce awoke to find defendant's thumb and forefinger touching his penis. Bryce acted like he "was sleeping" for a couple of minutes while the touching continued, until the alarm went off and defendant "got up and got ready for work." Defendant did not say anything to Bryce, and never spoke to him about the "fondling" incident. Thereafter, Bryce "stayed away" from defendant, although defendant did not change his behavior toward Bryce. Bryce "didn't say anything about it" to his mother, or anyone else.

Bryce also testified that a few months before the fondling occurred, defendant rented a pornographic movie that depicted "naked women" playing with "sex toys." He and defendant watched the movie for "awhile" in the bedroom. The same night – although Bryce was not sure if the movie was playing – he and defendant rubbed lotion on each other. Bryce recalled that he was wearing pajama bottoms, but no shirt.

---

[2] The issues raised by defendant in this appeal relate exclusively to the prior conviction allegations and findings. Our recitation of facts related to the underlying conviction will be tailored accordingly.

[3] For the sake of clarity, convenience and confidentiality we will refer to Bryce, his mother Christie B., and father Andrew B. by their first names.

2

The two incidents went unreported to anyone until Bryce was 14 years old, and his father Andrew discovered that defendant was registered as a sex offender. Andrew told Christie he did not want defendant in the same house as Bryce. Christie then told Bryce that defendant may move out of the house, whereupon Bryce disclosed to her that while she was at work he "had gotten into bed" with defendant "because he was afraid of the dark." He awoke with defendant's "hand on his penis." Bryce asked Christie "not to tell anyone."

The next morning Christie confronted defendant, and he told her "the same story." Defendant explained that while he was asleep he "had accidentally touched Bryce." When he awakened he was "horrified" at what occurred. He immediately told Bryce to "get out of the bed" and leave the room. Defendant was "sincerely upset and apologetic." He moved out of the house immediately. In subsequent conversations with Christie defendant reiterated that he apologized "for what he did."

The molestation was not reported or discussed with anyone else until Bryce was 16 years old and attended counseling "on an unrelated issue." Bryce told the counselor he "was molested" by defendant. In turn, the counselor reported the molestation to the police. As part of the ensuing investigation the police officers directed Bryce to make a pretext phone call to defendant in an attempt to seek admissions from him. In response to Bryce's inquiry during the recorded telephone conversation defendant stated that he was not "trying to have sex" with the victim, and stopped when he "realized what [he] was doing." Defendant described the act as a "weird show of affection." He expressed that he knew "it was hurtful," and was "really sorry" he "hurt" Bryce.

Defendant testified that he had "clear recollection" of the molestation incident. After work that day he drank beer and smoked marijuana. He was "very much" intoxicated when he went to bed by himself around 10:00. Bryce was "on his computer" when defendant retired. When defendant awoke, he was lying on his side with his hand was on Bryce's penis. Defendant was "in shock, and "freaked out" that Bryce was "even in there." He immediately removed his hand and directed Bryce to return to his own bedroom. The act was not intended, but just "happened."

3

According to defendant's testimony, the "massage incident" occurred when Bryce was 13 years old, long after the "bed incident." Defendant recalled that Bryce offered to put lotion on his back, and defendant agreed. Defendant then rubbed lotion on Bryce's back. They both had their shirts off, but were clothed from the waist down. Defendant insisted "there was nothing sexual about it."

As for watching "porn," defendant testified that on one occasion, entirely separate from the massage incident, he invited Bryce, who was then, "13 years old," to look at a movie of "Amazon women," naked from the waist up. No sexual acts occurred in the movie. After five or ten minutes Bryce became uncomfortable, so defendant changed the channel.

Defendant also offered testimony that described two separate events that resulted in his 1995 conviction for child molestation. Defendant admitted that he intentionally touched his daughter's friend "in the private area over her pajamas," when she was 10 or 11 years old, and sleeping over at the house. Thereafter, but also in 1995, defendant rolled over unintentionally and touched his daughter "in the privates," when she was in bed. When defendant realized he was touching his daughter he "stopped," and told her he "was sorry and that it would never happen again." As a result of his prior conviction, defendant was incarcerated, then placed on probation and received counseling.

Defendant's daughter, Rebecca W., essentially corroborated defendant's version of the incident with her. Rebecca testified that one night in 1995 she crawled into bed with her mother and defendant. For less than a minute defendant placed his hand on her genitals, then stopped. Rebecca was not even sure defendant was awake. When defendant realized "what he had done," he apologized and kissed Rebecca on the forehead before she left the room. Rebecca testified that on no other occasion did defendant engage in inappropriate conduct with her, and she was never angry with him. Rebecca believed the touching was an "honest mistake that he never meant to happen."

Testimony was also adduced by the defense from defendant's son and a friend of defendant's mother that after the molestation incident Bryce did not change his behavior, appear to be uncomfortable around defendant, or express any "bad feelings" toward

4

defendant.  The witnesses did not notice any inappropriate conduct by defendant directed at Bryce.

## DISCUSSION

### I. The Effect of the Judgment in the First Trial.

Defendant was tried twice on the charges against him.  He was charged in an information filed on October 24, 2008, with three counts of lewd conduct on a child (§ 288, subd. (a)), along with an allegation of a 1995 conviction of the same offense within the meaning of sections 667.51, subdivision (a), and 667, subdivisions (b) through (i).  During the first trial defendant stipulated that he suffered the alleged prior conviction.  At the conclusion of the trial the jury found defendant guilty of one count of lewd conduct on a child, not guilty of another count of lewd conduct on a child but guilty of a lesser misdemeanor assault offense (§ 240), and failed to reach a verdict on the third count.  Before sentencing occurred, the court granted a new trial due to juror misconduct.

An amended information filed on January 21, 2010, omitted the offense previously charged as count three, which resulted in the lesser assault offense conviction, and included only two counts of lewd conduct on a child, along with the prior conviction allegation under the provisions of sections 667.51, subdivision (a), 667.6, subdivision (a), and 667, subdivisions (b) through (i).  Before trial, defendant admitted that he suffered the prior conviction, although the five-year enhancement allegation pursuant to section 667.6, subdivision (a), was stricken on motion of the People.  Following the second trial, defendant was convicted of the two charged counts of lewd conduct on a child.  The trial court imposed an aggregate term of 30 years in state prison, which included consecutive terms on the two convictions which were doubled for the prior strike, a five-year enhancement under section 667, subdivision (a), and another five-year enhancement under section 667.51, subdivision (a).

Defendant argues that he was improperly charged with the prior conviction allegations in the amended information.  He claims that he was "impliedly acquitted of the prior-conviction allegations" in the first trial.  Therefore, under double jeopardy principles he could "not  . . . be put twice in jeopardy for the same offense" in the second

trial. He also maintains that his counsel was incompetent for failing to recognize and assert the double jeopardy prohibition against retrial of the prior conviction following the "implied finding" during the first trial that the enhancement allegations "were not true." Instead, defendant admitted the prior conviction – an admission defendant also challenges in this appeal.

" 'The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." This guarantee is applicable to the states through the Fourteenth Amendment. [Citation.] Similarly, article I, section 15, of the California Constitution provides: "Persons may not twice be put in jeopardy for the same offense . . . ." ' [Citation.]" (*Stanley v. Superior Court* (2012) 206 Cal.App.4th 265, 278.) "The double jeopardy bar protects against a second prosecution for the same offense following an acquittal or conviction, and also protects against multiple punishment for the same offense. [Citations.] Under both federal and California law, greater and lesser included offenses constitute the 'same offense' for purposes of double jeopardy. [Citations.] Thus, a conviction of a lesser included offense bars subsequent prosecution of the greater offense." (*People v. Bright* (1996) 12 Cal.4th 652, 660–661.)

However, defendant's contention that the double jeopardy attaches to prior conviction allegations is contrary to a long, unwavering line of case law. Both the United States Supreme Court and the California Supreme Court have definitively declared that the state and federal prohibitions against double jeopardy do not apply to proceedings in noncapital cases to determine the truth of prior conviction allegations, sentencing enhancements, or penalty allegations. (*Monge v. California* (1998) 524 U.S. 721, 734; *People v. Seel* (2004) 34 Cal.4th 535, 542; *People v. Barragan* (2004) 32 Cal.4th 236, 240–242; *People v. Monge* (1997) 16 Cal.4th 826, 829; *People v. Jenkins* (2006) 140 Cal.App.4th 805, 813–816.) Retrial of an alleged prior conviction is both permissible and proper. (*People v. Barragan, supra*, at p. 241.) We are not at liberty nor are we inclined to disregard or reconsider the holding of our high courts that the double

6

jeopardy clause does not preclude retrial on a prior conviction allegation in a noncapital sentencing context.  (*People v. Trujillo* (2006) 40 Cal.4th 165, 173–174.)

We also observe that the jury made no finding on the prior conviction allegation in the first trial.  Neither the court nor the jury made a determination that the prosecution failed to prove its case.  (*People v. Seel, supra,* 34 Cal.4th 535, 549–550.)  When a trial produces neither an acquittal nor a conviction, retrial may be permitted if the trial ended " 'without finally resolving the merits of the charges against the accused.'  [Citation.]" (*People v. Anderson* (2009) 47 Cal.4th 92, 104; *People v. Johnston* (2003) 113 Cal.App.4th 1299, 1306–1307; *People v. Craney* (2002) 96 Cal.App.4th 431, 441–442; *People v. Salgado* (2001) 88 Cal.App.4th 5, 12–13.)  In the context of a motion for new trial, unless the court rules that the evidence is insufficient as a matter of law – which did not occur here – the ruling does not bar retrial.  (*United States v. DiFrancesco* (1980) 449 U.S. 117, 130–131; *Porter v. Superior Court* (2009) 47 Cal.4th 125, 135–136; *People v. Seel, supra*, at pp. 549–550; *People v. Hatch* (2000) 22 Cal.4th 260, 271.)  Retrial of the prior conviction allegation was not error.  It follows that counsel was not incompetent for failing to make an objection to retrial that would ultimately have proved futile.  (*People v. Mendoza* (2000) 24 Cal.4th 130, 171.)

## II. Defendant's Admission of the Prior Conviction Allegation.

Defendant also claims that his admission of the prior conviction allegation in the second trial was not "voluntary and intelligent."  Defendant focuses on the failure of the trial court to specifically advise him of the "right to a *jury* trial of the prior conviction" to argue that his admission was less than voluntary and intelligent.  He asks that we reverse the doubled terms on counts one and two, as well as the two five-year enhancements of his sentence.

According to the record, at the commencement of the second trial defense counsel indicated that defendant "admits he suffered a prior conviction for 288 in Stanislaus County in 1985."  After consultation with counsel defendant agreed that he intended to admit the prior conviction allegations.  The trial court engaged in a rather methodical discourse related to the admission.  The court asked if defendant understood that upon

7

admission of the prior "it's no different than if you pled guilty to something?  That's no longer an issue for the *jury*."  (Italics added.)  Following a thorough explanation of the nature and consequences of admission of the prior conviction allegations, the court informed defendant that to enter the admission "you must waive and give up certain rights.  You have the right to a *trial*; the right to see and hear the witnesses against you testify under oath and through your attorney to question those witnesses; the right to remain silent and not incriminate yourself; and the right to present a defense, that is to testify in your own behalf, to present evidence and witnesses, and to use the court's subpoena power to bring evidence and witnesses before the court for your defense."  (Italics added.)  Defendant indicated that no promises or threats had been made to him, and he understood and waived his rights.

To effectuate a valid "admission of  prior felony convictions, the court must advise the accused of the right against compulsory self-incrimination, the right to confrontation, and the right to a jury trial.  [Citations.]  The trial court also must advise the accused of the penal consequences of admitting a prior conviction.  '[A]n accused, prior to the time the court accepts his admission of an allegation of a prior criminal conviction or convictions, is entitled to be advised: (1) that he may thereby be adjudged an habitual criminal . . . ; (2) of the precise increase in the term or terms which might be imposed, if any . . . ; and (3) of the effect of any increased term or terms of imprisonment on the accused's eligibility for parole.'  [Citation.]"  (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1420.)

In the case before us, the sole challenge to the admonitions by defendant is directed to the court's explicit reference to the right to a trial rather than a *jury* trial.  The rule has evolved that where the trial court failed "to provide specific admonitions of the rights surrendered by the admission of a prior-prison-term allegation, the validity of the admission depends not on express admonitions and waivers but on whether the admission was 'voluntary and intelligent under the totality of the circumstances.' " (*People v. Hinton* (2006) 37 Cal.4th 839, 875, fn. 12, quoting from *People v. Howard* (1992) 1 Cal.4th 1132, 1178.)  "By adopting in *Howard* the federal constitutional test of whether

8

under the totality of circumstances the defendant's admission is intelligent and voluntary, we rejected the rule that 'the absence of express admonitions and waivers requires reversal regardless of prejudice.' [Citation.] In replacing the old rule, the focus was shifted from whether the defendant received express rights advisements, and expressly waived them, to whether the defendant's admission was intelligent and voluntary because it was given with an understanding of the rights waived. After our *Howard* decision, an appellate court must go beyond the courtroom colloquy to assess a claim of *Yurko* error. [Citation.] Now, if the transcript does not reveal complete advisements and waivers, the reviewing court must examine the record of 'the entire proceeding' to assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of circumstances." (*People v. Mosby* (2004) 33 Cal.4th 353, 361.)

Upon our examination of the totality of circumstances we find that defendant's waiver of rights and admission of the prior conviction was voluntary and intelligent. The admonition of rights was immediately preceded by an exchange on the effect of an admission of the prior conviction upon the proceedings. The court advised defendant and his counsel that a stipulation would not prevent the jury from hearing of the prior conviction, whereas if defendant entered an admission, the prior conviction was "no longer for the jury to decide." The court repeated that if defendant wanted "to enter those admissions," and "do it with a full *Boykin-Tahl* waiver,"[4] then "they're not an issue for the jury." After consultation with counsel defendant agreed that he intended to admit the prior, and the court once again reiterated that if he did so, "[t]hat's no longer an issue for the jury."

In the context of the discussion of the admission, during which the role of the jury to decide the prior conviction allegation in the absence of an admission was emphasized, the court's subsequent advisement of defendant's right to a trial rather than a jury trial did not adversely impact his full understanding and waiver of rights. Further, at the first trial on the charges a stipulation to the prior conviction was read to the jury, which contributes

---

[4] (See *Boykin v. Alabama* (1969) 395 U.S. 238, 242–244; *In re Tahl* (1969) 1 Cal.3d 122, 132.)

to the inference that defendant was aware of his right to a jury trial on the matter. Defendant's " 'prior experience with the criminal justice system,' " although somewhat remote in time, also included a guilty plea after an admonishment of rights to the 1995 conviction, the same conviction which he admitted in the present case, which further demonstrates his awareness of rights. (*People v. Mosby, supra,* 33 Cal.4th 353, 364–365, citation omitted.) We conclude that the waiver and admission was valid. (*Id.* at p. 365.)

### III. The Section 667, Subdivision (b) Five-year Enhancement.

Defendant complains of the imposition of the five-year enhancement for the prior conviction under section 667, subdivision (b). He points out that the section 667, subdivision (b), enhancement was not charged, admitted, or found true by the jury. The Attorney General concedes that the enhancement must be stricken, and we agree.

### IV. The Section 667.51 , Subdivision (a) Five-year Enhancement.

Defendant also challenges the five-year enhancement imposed under section 667.51, subdivision (a), which in 2002, when the offenses were committed, specified a "five-year enhancement for a *prior conviction* of an offense listed in subdivision (b)," but also "provided that no additional term shall be imposed under this subdivision for any *prison term served* prior to a period of 10 years in which the defendant remained free of both prison custody and the commission of an offense that results in a felony conviction." (Italics added.) By 2010, when defendant was sentenced, section 667.51, subdivision (a), had been amended to omit the 10-year prior prison term wash-out provision. Defendant contends that his sentence must comply with the version of the statute in effect when the crimes were committed, which, he argues, required "a prior prison term" rather than a "prior conviction" to impose the enhancement. Defendant adds that "he did not serve a prior prison term" for his 1995 conviction, nor did the charge allege a prior prison term, so the enhancement pursuant to section 667.51, subdivision (a), is an unauthorized sentence and cannot stand.

To determine the meaning of the prior version of section 667.51, subdivision (a), "we are guided by familiar canons of statutory construction. ' "[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the

10

law." [Citation.] In determining that intent, we first examine the words of the respective statutes: "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.] 'Where the statute is clear, courts will not "interpret away clear language in favor of an ambiguity that does not exist." [Citation.]' " [Citation.] If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*People v. Wade* (2012) 204 Cal.App.4th 1142, 1148–1149.)

Although defendant takes us through the legislative history and an explanation of the apparent purposes of former section 667.51, subdivision (a), we need not proceed beyond the plain language of the statute to arrive at an interpretation. In unambiguous terms the 2002 version of section 667.51, subdivision (a), imposed a five-year enhancement for "each prior conviction" of an offense listed in subdivision (b), not for a prior prison term served. Only the exception that prohibits imposition of the enhancement where the defendant remained free of both prison custody and the commission of the prior offense which resulted in a felony conviction for a period of 10 years, was based on "prison term" served. We cannot interpret the explicit term "prior conviction" to mean prior prison term. The language "prior conviction" is not ambiguous, has an established meaning distinct from a prior prison term, and controls our interpretation of the statute. (See *People v. Moore* (2011) 51 Cal.4th 1104, 1122–1123; *People v. Dunbar* (2012) 209 Cal.App.4th 114, 117; *People v. Wade, supra,* 204 Cal.App.4th 1142, 1148–1149.)

The Legislature has demonstrated the ability to impose enhancements on an entirely separate basis for prior prison terms served (§ 667.5, subd. (b)), but did not do so in this instance. The Legislature was also free to impose an enhancement for a prior

11

conviction of enumerated offenses, but grant an exclusion for a 10-year wash-out period that is measured from the conclusion of a "prison term served."[5] Thus, as we interpret the former statute, the enhancement flowed from the prior conviction, but did not apply if a defendant who served a prior prison term for the felony conviction remained free of both custody and commission of another offense for 10 years. The section 667.51, subdivision (a), enhancement was properly imposed.

## V. The Imposition of the Upper Term.

Defendant's final contention is that the trial court erroneously imposed the upper term of eight years on count one without a jury finding beyond a reasonable doubt of the truth of the aggravating circumstances as required by the United States Supreme Court decisions in *Cunningham v. California* (2007) 549 U.S. 270, 274–275 (*Cunningham*), and *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*). Defendant points out that when he committed the crimes in 2002, the California determinate sentencing law (DSL) provided for a presumptive middle term in the triad of sentencing options, with an upper term sentence permissible only upon a finding of aggravating factors "found to be true by the court by a preponderance of the evidence," a sentencing scheme found violative of the Sixth Amendment in *Cunningham*. While the DSL sentencing scheme was subsequently amended to eliminate the presumptive middle term as the statutory maximum sentence by the date of sentencing in the present case, defendant argues that the amendments "cannot be applied" to his case "without violating the *Ex Post Facto* and Due Process clauses of the United States and California Constitutions."

In *Apprendi*, the United States Supreme Court held "that, under the Sixth Amendment, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' (*Apprendi, supra*, [530 U.S. 466,] 490.) In *Blakely v. Washington* (2004) 542 U.S. 296

---

[5] For those defendants who suffer a qualifying prior conviction under section 667.51, subdivision (a), but are granted probation rather than serve a prison term, the 10-year period may be measured from the conclusion of the probationary term, as the equivalent of a prison term for purposes of the statute. We note that defendant did not remain free of "commission of the prior offense" for a period of 10 years, as the wash-out exception requires.

[159 L.Ed.2d 403, 124 S.Ct. 2531], the high court extended the scope of *Apprendi* by defining 'statutory maximum' as the 'maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.' (*Blakely, supra*, at p. 303, italics omitted; see *In re Gomez* (2009) 45 Cal.4th 650, 656 [88 Cal.Rptr.3d 177, 199 P.3d 574].) Applying *Blakely*, the court later held in *Cunningham v. California*, *supra*, 549 U.S. 270, that California's determinate sentencing law did not comport with a defendant's Sixth Amendment jury trial right. As *Cunningham* explained, 'If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied.' (*Cunningham, supra*, at p. 290.) Because the aggravating circumstances necessary for imposition of an upper term 'depend on facts found discretely and solely by the judge' (*id*. at p. 288), the 'statutory maximum' prescribed in California's sentencing scheme is not the upper term but rather the middle term (*ibid*.)." (*People v. Myles* (2012) 53 Cal.4th 1181, 1220.)

In response to *Cunningham*, by March of 2007, the California Legislature passed Senate Bill No. 40, which amended section 1170, subdivision (b), to eliminate the presumptive middle term, by providing: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (Stats. 2007, ch. 3, § 2.) Soon thereafter, in *People v. Sandoval* (2007) 41 Cal.4th 825, 843–844 (*Sandoval*), the California Supreme Court judicially adopted the amendments to section 1170, and declared that the upper term sentence is now the statutory maximum; therefore, factors which a trial court may rely upon in imposing the upper term need not be decided by a jury beyond a reasonable doubt because they do not increase the penalty beyond the statutory maximum. The court also declared that the amended version of section 1170, subdivision (b), may be applied without constitutional violation to all sentencing proceedings conducted after the effective date of the amendments, even if the offense was committed prior to the effective date of the amendments. (*Sandoval, supra*, at pp. 852,

13

857; *People v. Jones* (2009) 178 Cal.App.4th 853, 866–867; *People v. Miller* (2008) 164 Cal.App.4th 653, 669.)

In *People v. Frandsen* (2011) 196 Cal.App.4th 266, 269, the defendant was convicted for involuntary manslaughter committed in 2002, and sentenced to the upper term of four years in 2010. The appellant in *Frandsen* contended, as does defendant here, that "the court violated [his] constitutional right to have a jury find every fact used in imposing punishment," (*id.* at p. 278) and ex post facto principles were violated by retroactive application of the amended version of section 1170, subdivision (b) to his crime committed before the reformation of the sentencing scheme to comply with *Cunningham*. The court in *Frandsen* adhered to the binding precedent announced in *Sandoval*, which held that " 'the prohibition on ex post facto laws applies only to statutory enactments, not to judicial decisions' in upholding a trial court's authority to impose an upper term sentence based on facts found by the court. [Citations.]" (*Id.* at p. 279.) The court declared: "In light of section 1170 as construed by *Sandoval*, the trial court's imposition of the upper-term sentence in 2010, after the amendment to section 1170 and publication of *Sandoval* in 2007, is lawful." (*Ibid.*)

We also express our obligation and commitment to follow *Sandoval* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), and conclude that the imposition on defendant of an upper term on count one did not contravene Sixth Amendment or ex post facto principles. (*People v. Jones, supra*, 178 Cal.App.4th 853, 866–867.) Thus, counsel did not render ineffective representation by failing to object to the aggravated term.

## DISPOSITION

The five-year sentence enhancement for the prior conviction imposed under section 667, subdivision (a) is stricken, and the case is remanded to the trial court to

14

modify the judgment and sentence accordingly.  In all other respects the judgment is affirmed.[6]

_____
Dondero, J.

We concur:


_____
Margulies, Acting P. J.


_____
Banke, J.

---

[6] By separate order filed this date, we deny defendant's related petition for writ of habeas corpus (A137070), based on a claim of ineffective assistance of counsel.