*See Dissenting Opinion*

Filed 2/25/20

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re BRANDON CRAIG BROWN<br><br>on Habeas Corpus. | E071401<br><br>(Super. Ct. Nos. WHCJS1800004<br>FSB039762)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill and Brian S. McCarville, Judges.  Affirmed.

Michael A. Ramos District Attorney, Philip P. Stemler, Deputy District Attorney, for Appellant.

James M. Crawford, under appointment by the Court of Appeal, for Respondent.

I.

INTRODUCTION

The People appeal from the trial court's orders granting respondent Brandon Craig Brown's (defendant) petition for writ of habeas corpus, vacating his sentence, and resentencing him to 16 years eight months in prison, which is eight years shorter than his

original sentence. The trial court granted his writ petition because his strike for carjacking as a juvenile does not qualify as a strike under Welfare and Institutions Code section 707, subdivision (b) and Penal Code section 667, subdivision (d)(3). The trial court also concluded that defendant's trial counsel provided ineffective assistance of counsel (IAC) by not objecting to the strike during sentencing.

The People contend the trial court erred in granting defendant's writ petition because (1) defendant's juvenile carjacking adjudication qualifies as a strike under 2006 law, (2) the trial court erred in applying *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*), retroactively, (3) the trial court exceeded its jurisdiction by vacating the carjacking strike entered in Los Angeles (case No. VA 076709) and Orange County (case No. 03NF1824) cases, (4) defendant's trial counsel was not ineffective, because the record of conviction established defendant's carjacking adjudication qualified as a strike, and (5) defendant's delay in filing his writ petition prejudiced the People's ability to oppose it.

We conclude the trial court did not err in applying *Gallardo* retroactively and granting defendant's writ petition on the ground defendant's juvenile carjacking adjudication does not qualify as a strike. We therefore need not address the People's additional IAC challenge. We further reject the People's other objections and affirm the writ petition order and judgment.

## II.

## FACTS AND PROCEDURAL BACKGROUND

A. *Prior Los Angeles Juvenile Court Carjacking Adjudication*

On October 2, 2001, the People filed in Los Angeles County juvenile court (LAJC), a petition under Welfare and Institutions Code section 602 (case No. VJ22377). The People alleged in count 1 that on September 29, 2001, when defendant was 17 years old, he committed the crime of carjacking (Pen. Code, § 215, subd. (a)) by unlawfully taking the victim's car by force or fear. The People alleged in count 2 that on the same date as the count 1 offense, defendant committed the crime of unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)) by unlawfully driving and taking a vehicle without the consent of the owner and with intent to permanently or temporarily deprive the owner of title to and possession of the vehicle.

On October 3, 2001, the court referred the LAJC matter to the probation department for a section 654 pre-plea report, with the matter continued to October 17, 2001. The Los Angeles County probation report dated October 17, 2001, summarized the facts of the carjacking offense. The report also included a victim statement, a statement of defendant's criminal history as a juvenile, defendant's personal history, interested party statements, a statement evaluating defendant's conduct under supervision, and a statement of the probation officer's analysis and recommended plan for defendant of placement with the California Youth Authority (CYA).

During the December 18, 2001, adjudication and disposition hearing, the LAJC sustained the juvenile petition, after defendant admitted both counts. The minute order states that the LAJC "read and considered the Probation Officer's Report filed herein and said report is admitted into evidence by reference." The LAJC ordered defendant detained in juvenile hall pending suitable placement. In April 2002, after the LAJC reviewed the probation report, the LAJC ordered defendant placed in a six-month camp program.

B. *Defendant's 2003 Crime Spree*

After defendant's release, defendant committed numerous crimes as an adult in March, April, and May 2003, in the counties of Los Angeles, Orange, San Bernardino, and Riverside.[1]

On August 8, 2003, defendant pled guilty and was convicted as an adult in Los Angeles County Superior Court (LASC) of two counts of second degree robbery committed in 2003 (LASC case No. VA 076709). The LASC sentenced defendant on October 20, 2003, to 12 years in prison, with the court finding defendant had one or more strikes. One of the alleged strikes was for the juvenile carjacking adjudication.

---

[1] Defendant also pled guilty and was convicted in Riverside Superior Court (RCSC) in 2007, of one count of second degree robbery committed in 2003 (RCSC case No. RIF110773) and was sentenced in 2007 to 13 years in prison. The Riverside case is not relevant to this appeal because, unlike the other criminal cases mentioned in this appeal, the juvenile carjacking adjudication was not included as a strike in the Riverside criminal case.

On April 27, 2004, defendant pled guilty and was convicted in Orange County Superior Court (OCSC) of two counts of second degree robbery committed in 2003 (OCSC case No. 03NF1824). On May 20, 2004, the OCSC sentenced defendant to two years in prison, with the court finding defendant had one or more strikes. One of the alleged strikes was for the juvenile carjacking adjudication.

C. *San Bernardino Superior Court Case*

In San Bernardino Superior Court (SBSC) case No. FSB039762, the People filed an information in July 2004, charging defendant as an adult with carjacking on March 27, 2003 (Pen. Code, § 215, subd. (a); count 1), attempted second degree robbery on April 16, 2003, and May 15, 2003 (Pen. Code, §§ 664, 211; counts 2, 8), and second degree robbery on May 1, 4, and 15, 2003 (Pen. Code, § 211; counts 3-7, 9-10). The information further alleged as to count 1, that defendant personally used a deadly weapon (Pen. Code, § 12022, subd. (b)(2)). The information also alleged defendant suffered a prior serious and or violent felony conviction (Pen. Code, §§ 667, subd. (d), 1170.12, subd. (b)). The alleged strike was for the juvenile carjacking adjudication committed in Los Angeles, in 2001 (LAJC case No. VJ22377).

1. *Guilty Plea in the SBSC Case*

On May 12, 2006, defendant withdrew his not guilty plea in the SBSC case and entered a guilty plea to counts 1 through 8, and 10 of the information. Defendant also admitted the enhancement allegations. Defendant and his attorney, Earl Carter, signed a plea agreement form, agreeing to an aggregate sentence of 20 years eight months, to run

5

consecutive to a four-year term imposed in LASC case No. VA076709, for a total prison term of 24 years eight months.

2. *Sentencing in the SBSC Case*

On June 5, 2006, the SBSC sentenced defendant on counts 1 through 8, and 10, to an aggregate term of 24 years eight months, in accordance with defendant's guilty plea on May 12, 2006, with the court finding defendant had two strikes (Pen. Code, §§ 1170.12, subd. (c)(1), 667, subd. (e)(1)). The court ordered count 9 dismissed pursuant to defendant's plea bargain. Defendant's aggregate sentence included a consecutive four-year prison term imposed in the LASC case.

By letter dated December 27, 2016, Jean Harper, correctional case records analyst of the California Department of Corrections and Rehabilitation (CDCR), notified the SBSC that a review of defendant's sentencing documents in the SBSC case revealed that the abstract of judgment and minute order may have contained numerous enumerated sentencing errors. Harper suggested that the trial court correct the sentence. In January 2017, the SBSC read and considered the CDCR letter and ordered that the abstract remain unchanged, as submitted.

By an interoffice memorandum dated February 1, 2017, San Bernardino County Deputy Public Defender Tammy Higgins stated that she was asked to review defendant's juvenile court file to determine whether his juvenile carjacking adjudication qualified as a strike. Higgins determined that it did not qualify as a strike because it was not a crime listed in Welfare and Institutions Code section 707, subdivision (b). Higgins noted

6

defendant admitted violating Penal Code section 215, subdivision (a) (carjacking), but did not admit using a weapon when committing the crime, and there was no such allegation in the LAJC petition. Higgins further noted that defendant's plea agreement in the SBSC case showed that defendant pled to the entire complaint and admitted that he suffered a strike prior. In addition, defendant's sentence for the charges appeared to be miscalculated. Upon investigating the matter further, Higgins discovered the December 27, 2016, CDCR letter. Both the CDCR and Higgins concluded the court miscalculated defendant's sentence. The court, nevertheless, concluded there was no error and therefore did not amend the abstract of judgment.

Defendant thereafter moved to modify his sentence. The trial court ordered transcripts of the 2006 SBSC hearings but was informed that the transcripts were unavailable or no longer existed. The matter was continued and the court obtained a copy of the transcript of the June 5, 2006, sentencing hearing but was told there was no transcript of the May 12, 2006, plea hearing. After numerous continuances, in July 2017, the trial court heard defendant's motion to modify his sentence. During the hearing, the court and parties concluded defense counsel should proceed with seeking modification of defendant's sentence by filing a writ petition.

D. *Defendant's Petition for Writ of Habeas Corpus*

On January 5, 2018, defendant filed in SBSC a petition for writ of habeas corpus (case No. WHC1800004), alleging sentencing error was committed in SBSC case No. FSB039762. Defendant challenged the trial court's determination that his juvenile

carjacking adjudication qualified as a strike. Defendant alleged the juvenile carjacking adjudication did not qualify as a strike because there was no showing or admission that the carjacking offense was committed with a dangerous or deadly weapon. Defendant also argued his attorney provided IAC by failing to challenge the strike. Defendant requested the trial court to vacate his plea, conviction, and resulting sentence, and release him or, alternatively, conduct an evidentiary hearing on the strike.

Defendant attached to his writ petition a computer printout of the trial court's register of actions; a reporter's transcript of the June 5, 2006, sentencing hearing in the SBSC case; the LAJC petition; the December 27, 2016, CDCR letter notifying the court that defendant's sentence in the SBSC case appeared to be improper; the February 1, 2017, public defender memorandum concluding defendant's sentence was improper because defendant's juvenile carjacking adjudication did not qualify as a strike; and defendant's declaration supporting his writ petition.

Defendant stated in his supporting declaration that after consulting with his attorney on May 12, 2006, and upon his attorney's advice, defendant pled guilty in the SBSC case and admitted the juvenile carjacking strike allegation. In discussing the proposed plea bargain, defendant's attorney advised him that it made no difference that he was a juvenile when he committed the carjacking prior. It still qualified as a strike, and if defendant went to trial, he would be exposed to a maximum sentence of 45 years and four months. For these reasons, defendant accepted the plea deal.

8

Defendant further stated in his declaration that it was not until recently that defendant was told his juvenile carjacking strike might be improper. Upon learning this, defendant immediately sought legal assistance. His previous attorney never told him that his juvenile carjacking adjudication did not qualify as a strike unless it was alleged and proven that defendant was armed with a dangerous or deadly weapon when he committed the carjacking. Around December 27, 2016, defendant received the CDCR letter indicating there were discrepancies in his sentence. Defendant immediately contacted the San Bernardino County Public Defender's Office. Deputy Public Defender Higgins told defendant on February 1, 2017, that his juvenile carjacking adjudication did not qualify as a strike because there had been no allegation or proof that he used a dangerous or deadly weapon during the juvenile carjacking offense.

In April 2018, the SBSC issued an order to show cause (OSC) as to why defendant should not be allowed to withdraw his plea in the SBSC case. The court's order detailing the basis of its OSC states that "[t]he oral pronouncement of judgment is confusing as set forth in the reporter's transcript. The trial court made several mathematical mistakes and misspoke regarding the Los Angeles case number. . . . The abstract is in agreement with the plea as to the total of 24 years eight months, but has other obvious errors that do not conform with the trial court's oral pronouncement and appear in violation of Penal Code section 1170.1, subdivision (a). The abstract makes no mention of [defendant's] Los Angeles case, case [N]o VA076709."

9

In addition, the court ordered the People to show cause as to why defendant should not be allowed to withdraw his plea in the SBSC case or alternatively be resentenced as if he did not have a strike, on IAC grounds and because defendant did not enter his plea voluntarily and knowingly with the full understanding of its consequences.

E. *The People's Return to Defendant's Writ Petition*

In June 2018, the People filed a return (Return) to the writ petition, asserting that defendant provided an incomplete record, defendant's juvenile carjacking prior qualified as a strike, defendant's IAC objection lacked merit, defendant's guilty plea was knowing and voluntary, and defendant's writ petition was untimely and barred by laches. The People attached to their Return a copy of the probation report dated October 17, 2001, filed in the LAJC juvenile carjacking case.

The People also filed a declaration by defendant's previous attorney, Earl Carter, stating that he did not recall his investigation in the SBSC case or his advisements to defendant regarding defendant's maximum exposure in the case. Carter added that it was his custom and practice to investigate the validity of all allegations, advise his clients of them, and advise his clients regarding their maximum exposure when they were offered a plea bargain. Carter further stated he gave his case files and notes to defendant's current defense attorney.

Also attached to the People's Return were affidavits of unavailability of the reporter's transcript in the juvenile carjacking case, for the LAJC hearing on December

10

18, 2001; and the reporter's transcripts in the SBSC case, for hearings on January 6, 2006, April 19, 2006, and May 12, 2006.

F.  *Defendant's Traverse to the People's Return*

In July 2018, defendant filed a traverse to the People's Return, denying that defendant's juvenile carjacking adjudication qualified as a strike, because there was no admission or allegation that defendant was armed or used a dangerous or deadly weapon during commission of the carjacking.  Defendant further objected to the court considering the LAJC probation report because it constituted inadmissible hearsay and was not part of the record of conviction or plea in the juvenile carjacking case.  Defendant also argued IAC and that his guilty plea and admissions in the SBSC case were not made knowingly and intelligently.

G.  *The Trial Court's Ruling on Defendant's Writ Petition*

After reviewing the writ petition, return, and traverse, the trial court concluded an evidentiary hearing on defendant's writ petition was not required.  On August 31, 2018, the trial court heard oral argument on defendant's writ petition for modification of his sentence.  After hearing oral argument, the trial court granted defendant's writ petition and stayed the ruling for one week to allow the People time to decide how they wished to proceed.  The following week, on September 5, 2018, the trial court again granted defendant's writ petition and ordered defendant to be resentenced in the SBSC case based on the terms of defendant's original plea, with the exception that resentencing was not to include sentencing on the juvenile carjacking strike.

11

The SBSC explained in a detailed written order that defendant's writ petition was granted on the following grounds: (1) defendant's attorney committed IAC by failing to object to the juvenile carjacking strike; (2) *Gallardo*, *supra*, 4 Cal.5th 120, applied retroactively to the instant case; (3) the trial court could not rely on the probation report when determining whether defendant's juvenile carjacking adjudication qualified as a strike; (4) even if the probation report could be considered, it did not provide proof beyond a reasonable doubt that defendant used a weapon when committing the juvenile carjacking offense; and (5) the People's untimeliness/laches argument lacked merit because there was no prejudice caused by defendant's delay in seeking writ relief.

H. *Resentencing*

On September 7, 2018, the trial court in the SBSC case resentenced defendant in accordance with the trial court order granting defendant's writ petition. Because the court found that the juvenile carjacking adjudication did not qualify as a strike, defendant's sentence was reduced from 24 years eight months to 16 years eight months. The trial court resentenced defendant to an aggregate term of 11 years in the SBSC case (case No. FSB039762), and five years eight months for the two subordinate cases (LASC case No. VA 076709 and OCSC case No. 03NF1824), upon finding the juvenile carjacking adjudication also did not qualify as a strike in the LASC and OCSC cases.

III.

LAW APPLICABLE TO RULING ON A WRIT PETITION

Defendant requested the trial court to issue a writ of habeas corpus vacating his guilty plea, juvenile carjacking strike, enhancement admissions, and sentence imposed in the SBSC case. The People appeal the trial court's ruling granting defendant's writ petition request to vacate the strike and resentence defendant.

Under our state Constitution, a person improperly deprived of his or her liberty has the right to petition for a writ of habeas corpus. (Cal. Const., art. I, § 11; *People v. Duvall* (1995) 9 Cal.4th 464, 474 (*Duvall*).) A petition for a writ of habeas corpus collaterally challenges a presumptively final criminal judgment. Therefore, the petitioner bears a heavy burden to plead grounds for relief, and later to prove them. (*Duvall*, *supra*, at p. 474.)

When reviewing such a petition, the trial court "evaluates it by asking whether, assuming the petition's factual allegations are true, the petitioner would be entitled to relief. [Citations.] If no prima facie case for relief is stated, the court will summarily deny the petition." (*Duvall*, *supra*, 9 Cal.4th at pp. 474-475.) If the court finds the factual allegations establish a prima facie case for relief, the court will issue an OSC. (*Id.* at p. 475.) When an OSC issues, it is limited to the claims raised in the writ petition and the factual bases for those claims. Issuance of an OSC indicates the court's preliminary assessment that the petitioner would be entitled to relief if the petitioner's factual allegations are proved. (*Ibid.*)

The custodian of the confined person, the People, shall then file a responsive pleading, called a return, justifying the confinement. (Pen. Code, § 1480; *Duvall*, *supra*, 9 Cal.4th at p. 475.) The return shall allege facts establishing the legality of the petitioner's custody and respond to the petition allegations that the confinement is unlawful. (*Duvall*, *supra*, at p. 476.) In addition, the return should also "provide such documentary evidence, affidavits, or other materials as will enable the court to determine which issues are truly disputed." (*In re Lewallen* (1979) 23 Cal.3d 274, 278, fn. 2; accord, *Duvall*, *supra*, at p. 476.) In response to the return, the petitioner may file a traverse, which either admits or disputes the return's factual allegations responsive to the petition. (*Duvall*, *supra*, at p. 477.)

In the instant case, the parties and trial court followed these procedures. The trial court concluded that an evidentiary hearing was not required. After reviewing the pleadings and attached exhibits, and listening to oral argument, the court granted defendant writ relief.

IV.

DEFENDANT'S JUVENILE CARJACKING

ADJUDICATION STRIKE

The People argue the trial court erred in ruling that defendant's juvenile carjacking adjudication does not qualify as a strike. The primary issue here is whether the court may rely on the contents of the probation report in finding that the juvenile carjacking adjudication qualifies as a strike.

A. *Law Applicable to Strikes Based on Juvenile Adjudications*

Under paragraph (B) of Penal Code section 667, subdivision (d)(3), "[a] prior juvenile adjudication shall constitute a prior felony conviction for Three Strikes purposes only if the prior offense is listed in Welfare and Institutions Code section 707 [subdivision] (b)" and is classified as a "serious" felony under Penal Code section 1192.7, subdivision (c), or as a "violent" felony under Penal Code section 667.5, subdivision (c).  (*People v. Garcia* (1999) 21 Cal.4th 1, 13.)

In the instant case, defendant was charged in 2001, as a juvenile, with carjacking (Pen. Code, § 215, subd. (a)) and unlawful driving or taking of a vehicle (Pen. Code, § 10851, subd. (a)).  These crimes are not included in the Welfare and Institutions Code section 707, subdivision (b), list of offenses that qualify as a strike.  After the LAJC admitted into evidence the probation report, defendant admitted the charges and the juvenile court sustained the juvenile petition charges.

The People agree that carjacking, alone, when committed by a juvenile, does not qualify as a strike.  However, the People argue defendant's juvenile carjacking adjudication qualifies as a strike under Welfare and Institutions Code section 707, subdivision (b)(25), because the facts stated in the probation report establish that defendant committed the crime of "Carjacking, as described in [s]ection 215 of the Penal Code, *while armed with a dangerous or deadly weapon*."  (Welf. & Inst. Code, § 707, subd. (b)(25), italics added.)  Such a crime is included in the list of juvenile crimes qualifying as a strike.  (Welf. & Inst. Code, § 707, subd. (b).)  The trial court hearing

15

defendant's writ petition rejected the People's argument, concluding that under the recent decision of *Gallardo*, *supra*, 4 Cal.5th 120, the trial court could not make the factual weapon-use finding based on the probation report.

B.  Gallardo

The People acknowledge that the California Supreme Court in *Gallardo*, *supra*, 4 Cal.5th 120, held that, when determining whether a prior conviction is a serious felony for purposes of increasing a sentence, the trial court is limited to "those facts that were established by virtue of the conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea." (*Id*. at p. 136; see also *id*. at p. 134.)  Such a determination about the nature of a prior conviction thus is to be made by the court solely based on the record of conviction. (*Id*. at p. 138.)  Where there has been a plea, the determination of whether the plea encompassed a relevant admission about the nature of the crime, is limited to the record of the conviction entered on the plea. (*Id*. at pp. 138-139.)  The California Supreme Court thus concluded the trial court in *Gallardo* had engaged in constitutionally prohibited factfinding by looking beyond the defendant's record of conviction to find that a prior conviction qualified as a strike. (*Id.* at pp. 134-137.)

16

Here, as in *Gallardo*, the trial court made a determination regarding the underlying disputed facts of defendant's prior juvenile carjacking adjudication, when sentencing defendant in 2006. In finding defendant's juvenile carjacking adjudication qualified as a strike, the trial court engaged in the kind of factfinding that the *Gallardo* court prohibited. The trial court looked beyond the record of conviction. The People argue *Gallardo* does not apply retroactively to defendant's 2006 sentence, in which the trial court found defendant's juvenile carjacking adjudication qualified as a strike.

C. Gallardo *Applies Retroactively to Defendant's Unauthorized Sentence*

*Gallardo*, *supra*, 4 Cal.5th 120 applies retroactively here because defendant's sentence constitutes an unauthorized sentence as to his juvenile carjacking strike. It is unclear from the record on appeal whether the court and parties were aware during sentencing in 2006, that defendant's 2001 juvenile carjacking adjudication did not qualify as a strike, unless he committed the carjacking with a dangerous and deadly weapon. The record does not disclose the basis for the trial court's determination that the carjacking adjudication qualified as a strike. The record on appeal demonstrates that the only way the court could have reached such a conclusion was to rely on facts outside the record of conviction, which is improper under *Apprendi v. New Jersey* (2000) 530 U.S. 466, *Descamps v. United States* (2013) 570 U.S. 254, *Gallardo*, and the Sixth Amendment. Because there were no facts upon which the sentencing court could have properly found defendant was armed or used a gun when committing the carjacking prior, imposition of the juvenile carjacking strike was unlawful, resulting in an unauthorized sentence.

17

It is settled law in California that an unauthorized sentence can be challenged and corrected at any time. (*People v. Scott* (1994) 9 Cal.4th 331, 354; *Montgomery v. Louisiana* (2016) ⎯⎯ U.S. ⎯⎯, 136 S.Ct. 718, 723 [defendant permitted to challenge sentence as cruel and unusual punishment 50 years after his arrest]; *People v. Sanchez* (2016) 245 Cal.App.4th 1409, 1417.) Habeas corpus relief is thus proper here where defendant was sentenced to serve an illegal or unauthorized sentence. (*In re Harris* (1993) 5 Cal.4th 813, 839.) Writ relief may be granted when "the sentencing court acted in excess of its jurisdiction by imposing a sentence on the petitioner that was longer than that permitted by law." (*In re Harris*, *supra*, 5 Cal.4th at p. 839; see also *ibid*. ["We again invoked this rule in a case in which a habeas corpus petitioner claimed two enhancement provisions were improperly applied to lengthen his overall sentence."].) Habeas corpus will also lie "'to correct a misinterpretation of [a] statute resulting in confinement "in excess of the time allowed by law" [citation].'" (*In re Harris* (1989) 49 Cal.3d 131, 134, fn. 2, quoting *In re Huffman* (1986) 42 Cal.3d 552, 555.)

The unauthorized sentence exception to the general rule precluding relief after a judgment is final, applies here. Defendant's sentence is unauthorized, either because the sentencing court in 2006 simply overlooked the fact the carjacking strike was based on a juvenile adjudication which does not qualify as a strike, or the court improperly found the prior qualified as a strike based on facts outside the record of conviction. Either way, defendant's 2001 juvenile carjacking adjudication does not qualify as a strike. Therefore,

18

the trial court properly granted defendant's petition for habeas corpus writ relief and vacated defendant's carjacking strike.

D. Gallardo *Applies Retroactively Under the California Retroactivity Standard*

We further conclude *Gallardo*, *supra*, 4 Cal.5th 120 applies retroactively here based on California's retroactivity standard for assessing retroactivity of judicial decisions. The People assert that this court should apply the federal, rather than state, retroactivity standard, because the *Gallardo* holding is based on federal Sixth Amendment principles. The federal retroactivity standard is narrower and thus is generally more difficult to meet than the state standard. (*In re Ruedas* (2018) 23 Cal.App.5th 777, 799 (*Ruedas*); see also *In re Thomas* (2018) 30 Cal.App.5th 744, 757 (*Thomas*); *In re Johnson* (1970) 3 Cal.3d 404, 413 ["the states are free to give greater retroactive impact to a decision than the federal courts choose to give"].) The People acknowledge that under *Danforth v. Minnesota* (2008) 552 U.S. 264 and *In re Gomez* (2009) 45 Cal.4th 650, 655, California courts may apply the state retroactivity standard regarding new judicial opinions, such as *Gallardo*, which address federal constitutional principles.[2]

---

[2] The People acknowledge there is a split of opinion among state appellate courts as to whether the federal or state retroactivity standard applies. The California Supreme Court has not resolved this controversy. In *Thomas*, *supra*, 30 Cal.App.5th at pp. 749, 760-761, this court concluded the state retroactivity standard applies in writ petitions filed in state court. The California Supreme Court in *Gomez* suggested that this court may, but is not required to, apply the state retroactivity standard, rather than the federal standard, when determining retroactivity of a judicial decision founded on federal constitutional principles. (*In re Gomez*, *supra*, 45 Cal.4th at p. 655, fn. 3; but see *Thomas*, *supra*, at p. 761.) The *Gomez* court explained that this freedom to apply the

19

Because we conclude, as discussed below, *Gallardo* applies retroactively under the state retroactivity standard, we need not consider whether *Gallardo* applies retroactively under the federal retroactivity standard. (*Ruedas*, *supra*, 23 Cal.App.5th at pp. 798-799; *In re Gomez*, *supra*, 45 Cal.4th at p. 655, fn. 3.)

### 1. Gallardo *Created a New Rule*

The threshold inquiry in determining retroactivity is whether a judicial holding constitutes a "new rule." (*Ruedas*, *supra*, 23 Cal.App.5th at p. 799.) Defendant argues *Gallardo* does not create a new rule and therefore *Gallardo* can be applied as decisional precedent, without considering either the state or federal retroactivity standards. The People, on the other hand, argue *Gallardo* is a new rule. We agree.

A judicial decision constitutes a "new rule" under state law when the judicial decision "(1) explicitly overrule[s] a precedent of the California Supreme Court, or (2) disapprove[s] a practice implicitly sanctioned by prior decisions of the Supreme Court, or (3) disapprove[s] a long-standing and widespread practice expressly approved by a near-unanimous body of lower court authorities." (*Thomas*, *supra*, 30 Cal.App.5th at p. 761; *In re Lucero* (2011) 200 Cal.App.4th 38, 45, citing *People v. Guerra* (1984) 37 Cal.3d 385, 401; see also *Ruedas*, *supra*, 23 Cal.App.5th at pp. 799-800.)

_____

state standard is because "California is free to adopt its own standard and rules regarding the retroactivity of new judicial opinions. [Citation.] This freedom stems from the recognition that states are 'independent sovereigns with plenary authority to make and enforce their own laws as long as they do not infringe on federal constitutional guarantees.' [Citation.]" (*Ruedas*, *supra*, 23 Cal.App.5th at pp. 798-799, citing *In re Gomez*, *supra*, 45 Cal.4th at p. 655, fn. 3, and quoting *Danforth v. Minnesota*, *supra*, 552 U.S. at p. 280.)

20

Under this definition of a "new rule," the *Gallardo* decision created a new rule of law by explicitly overruling the firmly established case precedent of *People v. McGee* (2006) 38 Cal.4th 682. *McGee* provided controlling Supreme Court precedent on the trial court's authority to make factual findings when determining whether a prior conviction qualifies as a strike. (*In re Lucero*, *supra*, 200 Cal.App.4th at p. 45.) In overruling *McGee*, the *Gallardo* court held that *McGee* "is no longer tenable insofar as it authorizes trial courts to make findings about the conduct that 'realistically' gave rise to a defendant's prior conviction. The trial court's role is limited to determining the facts that were necessarily found in the course of entering the conviction. To do more is to engage in 'judicial factfinding that goes far beyond the recognition of a prior conviction.'" (*Gallardo*, *supra*, 4 Cal.5th at p. 134, quoting in part *Descamps v. United States*, *supra*, 570 U.S. at p. 255.)

2. *The* Gallardo *Rule is a Procedural Rule*

Defendant argues that the *Gallardo* new rule applies retroactively to his 2006 sentence because the *Gallardo* rule is a substantive rule, not procedural. Under state law, a substantive new rule, which changes a criminal law, will generally be given retroactive effect. (*In re Martinez* (2017) 3 Cal.5th 1216, 1222-1223.) A rule is substantive when "it alters the range of conduct or the class of persons that the law punishes, or it modifies the elements of the offense." (*Id.* at p. 1222; see also *In re Lopez* (2016) 246 Cal.App.4th 350, 357.)

21

The *Gallardo* rule is procedural, not substantive, because it does not alter the range of conduct or persons the law punishes, or modify the elements of an offense. Rather, *Gallardo* holds the trial court is generally barred from making disputed factual findings when determining whether a prior conviction qualifies as a strike. (*Gallardo*, *supra*, 4 Cal.5th at pp. 136-139.) This procedural rule thus cannot be applied retroactively unless it qualifies under either the state or federal retroactivity standard.

3. *Application of the State Retroactivity Standard*

The state retroactivity standard, applicable to a procedural new rule such as the *Gallardo* rule, is articulated in *In re Johnson*, *supra*, 3 Cal.3d at page 410. Under the state standard, "the retroactivity of a new rule 'is to be determined by ""(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.""' [Citation.]" (*In re Lucero*, *supra*, 200 Cal.App.4th at p. 45, quoting *In re Johnson*, *supra*, at p. 413.)

The first factor is of primary importance and will generally be deemed controlling if the new rule's purpose plainly favors retroactive or prospective application. (*Ruedas*, *supra*, 23 Cal.App.5th at p. 800.) "[T]he factors of reliance and burden on the administration of justice are of significant relevance only when the question of retroactivity is a close one after the purpose of the new rule is considered." (*In re Johnson*, *supra*, 3 Cal.3d at p. 410.)

22

Under the state retroactivity test, "the more directly the new rule in question serves to preclude the conviction of innocent persons, the more likely it is that the rule will be afforded retrospective application. Further, if the rule relates to characteristics of the judicial system which are essential to minimizing convictions of the innocent, it will apply retroactively regardless of the reliance of prosecutors on former law, and regardless of the burden which retroactivity will place upon the judicial system." (*In re Johnson*, *supra*, 3 Cal.3d at p. 413; accord, *In re Lucero*, *supra*, 200 Cal.App.4th at p. 45.) "[T]he most consistent application of this principle [of applying new rules retroactively] has been in cases in which the primary purpose of the new rule is to promote reliable determinations of guilt or innocence." (*People v. Guerra*, *supra*, 37 Cal.3d at p. 402; accord *In re Lucero*, *supra*, at p. 45.) As we noted in *Thomas,* "[i]f the new rule aims to deter future misconduct or to define procedural rights merely incidental to a fair determination of guilt or innocence, it will generally not be given retroactive effect. [Citations.] On the other hand, if a decision goes to the integrity of the factfinding process [citation], or 'implicates questions of guilt and innocence' [citation], retroactivity is the norm." (*Thomas*, *supra*, 30 Cal.App.5th at p. 763.)

Here, the new rule in *Gallardo* bars the trial court from making disputed factual findings regarding the defendant's conduct underlying a prior conviction, based on facts outside the record of conviction or facts that were not admitted by the defendant during his plea or found true by the jury. The *Gallardo* rule thus goes to the integrity of the factfinding process when the court determines whether a prior conviction qualifies as a

23

strike. The primary purpose of the *Gallardo* rule is to promote reliable determinations of a defendant's guilt or innocence in committing underlying acts, apart from the elements of a conviction, required to impose a strike.

Because the purpose of *Gallardo* "relates to characteristics of the judicial system which are essential to minimizing convictions of the innocent" used to increase a defendant's sentence (*In re Johnson*, *supra*, 3 Cal.3d at p. 413), the purpose of the *Gallardo* rule weighs heavily in favor of retroactive application. (*In re Johnson*, *supra*, at p. 413; accord, *In re Lucero*, *supra*, 200 Cal.App.4th at p. 45.) We are not convinced that the other less weighty factors, such as the prosecutors' reliance on the former law and the burden retroactivity will place upon the judicial system, outweigh the purpose of the *Gallardo* rule, which ensures that a defendant is sentenced fairly, in adherence to constitutional factfinding procedures, consistent with a defendant's Sixth amendment and due process rights.

Citing *Thomas* in their appellate reply brief, the People argue that *Gallardo* should not be applied retroactively under either the state or federal retroactivity standard. The defendant in *Thomas* filed a petition for writ of habeas corpus, asserting his conviction for active participation in a criminal street gang was invalid based on the *Sanchez* rule. In *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*), the California Supreme Court held that introducing case-specific, testimonial hearsay statements through expert witness testimony violates the Sixth Amendment confrontation clause, unless (1) the person who made the hearsay statements is unavailable and (2) the defendant had an opportunity to

24

cross-examine the declarant or forfeited that right by wrongdoing. (*Sanchez*, *supra*, at p. 686.) In *Thomas*, this court held that the *Sanchez* rule does not apply retroactively under the state retroactivity standard. (*Thomas*, *supra*, 30 Cal.App.5th at p. 749.)

 *Thomas* is inapposite. It involves a different new rule, the *Sanchez* rule, which concerns admissibility of hearsay trial testimony provided by expert witnesses (*Sanchez*, *supra*, 63 Cal.4th at p. 686). In *Thomas* this court stated that the purpose of the *Sanchez* rule relates to the integrity of the factfinding process which implicates questions of guilt and innocence. (*Thomas*, *supra*, 30 Cal.App.5th at p. 765) Nevertheless, this court held the *Sanchez* rule was not retroactive under the state retroactivity test. We concluded in *Thomas* that the harm to the administration of justice, especially in the face of law enforcement and prosecutorial reliance on the old rule, outweighs the benefit of employing the new rule to fix past wrongful convictions. (*Thomas*, *supra*, at pp. 765-766.) This court concluded in *Thomas* that the "connection between the *Sanchez* rule and avoiding wrongful convictions is significant, but not strong." (*Thomas*, *supra*, at p. 765.) This is because the effect of the *Sanchez* rule would not have prevented prosecutors from introducing expert testimony. Expert testimony was merely weakened by excluding the expert's hearsay statements supporting the expert opinion's testimony. Furthermore, the impact of excluding hearsay statements was not strong because the facts provided by the excluded evidence in most instances could be established by alternative evidence. (*Thomas*, *supra*, at pp. 765-766.)

This court further reasoned in *Thomas* that the burden on the administration of justice, of applying the *Sanchez* rule retroactively to cases already final, would be immense, because doing so "would result in reopening thousands of cases in which the prosecution used a shortcut even though it could have obtained a conviction using other evidence." (*Thomas*, *supra*, 30 Cal.App.5th at p. 766.) In addition, "applying the new rule retroactively to final cases would be too disruptive and costly. The alternative evidence prosecutors could have used in cases tried years and even decades ago likely has gone stale. That means many of the people who would receive relief would be offenders who could have been convicted using the *Sanchez* rule originally, but could not be convicted using the same rule today, though not because of innocence. We must also consider the raw cost to the court system of reopening these thousands of final cases for retrial and subsequent appeals. We conclude the benefits of applying the new rule retroactively do not justify the disruption to the administration of justice." (*Thomas*, *supra*, at pp. 766-767.)

*Thomas* is distinguishable from the instant case not only because *Thomas* concerns a different new rule than the new rule in this case.[3] In addition, the *Gallardo* rule concerns a new procedural rule affecting sentencing, whereas the *Sanchez* rule in *Thomas* concerns a new evidentiary rule applied during a trial, which, if applied retroactively, could result in overturning thousands of criminal convictions. In contrast, the *Gallardo* rule does not affect criminal convictions. Rather, it ensures proper judicial factfinding in

---

[3] *Reudas*, in which the Fourth District, Third Division of the Court of Appeal also addressed the retroactivity of the *Sanchez* rule, is similarly distinguishable.

26

the context of sentencing, in determining if a prior conviction qualifies as a strike. The *Gallardo* rule's purpose is fundamental and significant in that it directly affects the defendant's sentence, as opposed to the *Sanchez* rule affecting admissibility of hearsay testimony relied on by an expert in forming expert opinion. The *Gallardo* rule strongly relates to characteristics of the judicial system which are essential to minimizing convictions of the innocent and avoiding over-sentencing. Unlike in *Sanchez*, the purpose of the *Gallardo* rule weighs heavily in favor of retroactive application.

Furthermore, the burden on the judicial system of applying *Gallardo* retroactively is unclear. It may result in requiring resentencing in numerous cases, in which the trial court has improperly found a prior conviction qualified as a strike based on the court's own factual findings. Applying the *Gallardo* rule retroactively to final cases may be disruptive and costly but not to the same extent as anticipated in applying the *Sanchez* rule retroactively.

Here, defendant challenges his 2006 sentence but not his criminal convictions. We conclude that under the state retroactivity standard, the trial court properly applied *Gallardo* retroactively, and in doing so, did not abuse its discretion in granting defendant's writ petition on the ground defendant's juvenile carjacking strike did not qualify as a strike.

E.  In re Milton (2019) 42 Cal.App.5th 977 (*Milton*)

After oral argument in this matter in November 2019, and after the parties submitted on the matter, but before this court issued its decision, the Second District Court, Division 7, published *Milton*, *supra*, 42 Cal.App.5th 977 on December 3, 2019 (petition for rev. filed Jan. 3, 2020).  *Milton* is the first published case to address the issue of whether *Gallardo* applies retroactively to a sentence under the Three Strikes law imposed many years before the 2017 *Gallardo* decision.  The court in *Milton* held that *Gallardo* should be applied prospectively to cases that are already final.  (*Milton*, *supra*, at p. 981.)

The day after *Milton* was decided, the People filed a motion to vacate submission and allow supplemental briefing on *Milton*.  This court granted the People's motion and the parties filed supplemental briefs addressing *Milton*.  The People argue in their supplemental brief that this court should adopt the reasoning and holding in *Milton*, and hold that *Gallardo* does not apply retroactively to the instant case under the state and federal retroactivity standards.  The People further argue that *Milton* supports the People's contention that the probation report, entered into evidence during defendant's juvenile plea, is sufficient to establish that his juvenile carjacking adjudication qualifies as a strike.

Defendant argues in his supplemental brief that *Milton* was erroneously decided and should be disregarded.  Defendant further argues that, even if *Gallardo* does not apply retroactively, he is entitled to habeas corpus relief because the probation report was

28

not part of the record of conviction and there was no admissible evidence establishing that his prior carjacking qualified as a strike.

Before *Milton* was decided, defendant and the People raised essentially the same arguments argued *Milton*. We have thus already addressed those arguments, as discussed above. We agree with *Milton* to the extent it concludes that under the federal and state retroactivity standards, *Gallardo* established a procedural new rule. (*Milton*, *supra*, 42 Cal.App.5th at pp. 991, 993, 997.) However, as discussed above in our opinion, we respectfully disagree with the *Milton* court's conclusion that *Gallardo* does not apply retroactively under the state retroactivity standard. The court in *Milton* reasoned (1) *Gallardo* did not vindicate a right essential to the reliability of the factfinding process and (2) applying *Gallardo* retroactively would be disruptive. (*Milton*, *supra*, at pp. 998-999.)

We are not persuaded that these two grounds justify depriving defendants of retroactive application of *Gallardo*. We recognize that the factfinding process might not be any less reliable if conducted by the sentencing judge, and might even be better. We recognize that applying *Gallardo* retroactively will be disruptive and burdensome to the courts. Nevertheless we conclude these factors do not outweigh a defendant's constitutional right to a jury determination of facts upon which a strike is based when the strike is founded on a crime statute that does not categorically match the predicate prior crime. (*Gallardo*, *supra*, 4 Cal.5th at pp. 135-136.) We conclude *Gallardo* applies retroactively under the state retroactivity standard.

F. *Court Reliance on Facts in the Probation Report*

The People contend that, regardless of whether *Gallardo* applies retroactively, the trial court could rely on the facts in the probation report when determining whether the juvenile carjacking adjudication qualified as a strike, because defendant failed to object to the juvenile court admitting into evidence the probation report. The People argue defendant's failure to object constitutes an adoptive admission of all of the facts stated in the probation report. The People therefore conclude that the probation report statements indicating defendant may have used a firearm when committing the carjacking provide a sufficient factual basis for the court to find that defendant's juvenile carjacking adjudication qualifies as a strike. We disagree.

The absence of an objection to the probation report does not constitute an adoptive admission by defendant of the hearsay statements contained in the probation report. We recognize that the defendant's "'"silence, evasion, or equivocation may be considered as a tacit admission of the statements made in his presence."'" (*People v. Jennings* (2010) 50 Cal.4th 616, 661; accord, *People v. Sample* (2011) 200 Cal.App.4th 1253, 1262.) However, in order for such a statement to be an adoptive admission, there must be sufficient evidence that "(1) the defendant heard and understood the statement *under circumstances normally calling for a response*, and (2) the defendant adopted the statement as true by the defendant's words or conduct." (*People v. Sample*, *supra*, at p. 1262 (italics added); accord, *People v. Jennings*, *supra*, at p. 661; see also Evid. Code, § 1221.)

30

Here, the fact that defendant did not object to the probation report during the juvenile jurisdictional hearing does not constitute ""'"circumstances that would normally call for a response if the statement were untrue.'"'" (*People v. Sample*, *supra*, 200 Cal.App.4th at p. 1262.) The weapon-related statements in the probation report were not read aloud during the jurisdictional hearing, did not establish an element of the juvenile carjacking crime, and were not mentioned during the hearing when defendant admitted the juvenile carjacking charge. Under such circumstances, defendant did not have any reason or motive to contest or object to the weapon-related facts in the probation report. We thus conclude that merely not objecting to the probation report does not constitute an adoptive admission by defendant that all of the weapon-related facts stated in the probation report are true.

As a consequence, it was improper for the SBSC during sentencing to rely solely on the probation report to supply weapon-use facts for the strike, particularly when those facts were not relevant to the elements of the juvenile carjacking offense. (*People v. Oehmigen* (2014) 232 Cal.App.4th 1, 5, 10; see also *People v. Burnes* (2015) 242 Cal.App.4th 1452, 1458-1459.) We thus conclude defendant and his attorney's silence in response to the court admitting into evidence the probation report does not constitute an adoptive admission of the weapon-use facts. (*People v. Sample*, *supra*, 200 Cal.App.4th at p. 1262.)

The People's reliance on *People v. Reed* (1996) 13 Cal.4th 217 for the proposition the probation report's hearsay statements are admissible under the public records hearsay

exception (Evid. Code, § 1280) is misplaced. *Reed* was decided before *Gallardo*, which held that the sentencing court cannot make factual findings on whether a prior conviction qualifies as a strike. (*Gallardo*, *supra*, 4 Cal.5th at p. 136.) Thus, even assuming the sentencing court could consider the facts in the probation report, it would be improper for the SBSC under *Gallardo* to make a factual finding that defendant actually used a weapon to commit the carjacking based on the facts in the probation report.

In addition, the probation report does not state that defendant used a firearm to commit the carjacking offense, and the factual hearsay statements in the probation report do not constitute proof beyond a reasonable doubt that he did so. (*Gallardo*, *supra*, 4 Cal.5th at p. 138.) The probation report states that, according to the police report, the victim told a police officer, who reported to the scene, that when she heard defendant tell her to give him her car, she turned toward defendant and noticed he had a handgun in his waistband. Out of fear, the victim gave defendant her car keys and defendant took her car. The probation report further states that the victim told the reporting probation officer she believed she was held at gunpoint when defendant "struck something against her back" during the incident. The victim also said that she saw the black tip of an object in defendant's waistband when his shirt was raised. These facts do not establish beyond a reasonable doubt that defendant used a weapon during the carjacking.

Even assuming these facts are sufficient to prove beyond a reasonable doubt that defendant used a dangerous or deadly weapon during the commission of the carjacking, under *Gallardo*, the trial court was precluded from making such a factual determination

32

during the SBSC sentencing hearing.  In determining whether defendant's juvenile carjacking adjudication qualified as a strike, the trial court could only rely on "those facts that were established by virtue of the conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea."  (*Gallardo*, *supra*, 4 Cal.5th at p. 136.)

In the instant case, when determining whether defendant's juvenile carjacking adjudication qualified as a strike, the SBSC was limited to the facts the juvenile court was necessarily required to find to render the carjacking adjudication and to facts defendant admitted as the factual basis for the carjacking adjudication.  Those facts do not include all of the facts stated in the probation report, even though the probation report was admitted into evidence without objection during the juvenile jurisdictional hearing.  When sentencing defendant under *Gallardo*, it was improper for the trial court to make a factual finding as to whether the probation report facts were sufficient to make a weapons-use finding when neither the juvenile court made such a finding nor did defendant admit such facts.  When deciding defendant's writ petition, the trial court thus appropriately disregarded the weapon-related facts stated in the probation report when ruling the juvenile carjacking adjudication did not qualify as a strike.

Because we conclude the trial court did not err in granting defendant's writ petition on the ground defendant's juvenile carjacking adjudication does not qualify as a strike, we need not address the People's objection to the trial court granting the writ

petition based on the ground defendant's attorney committed IAC by failing to object to the strike.

## V.

## LACHES

The People contend defendant's writ petition was untimely and the delay in bringing it prejudiced the People's ability to challenge the writ petition, because reporters' transcripts of relevant proceedings were no longer available and defendant's attorney could not remember the proceedings.

As explained in *In re Robbins* (1998) 18 Cal.4th 770, 777, "California law also recognizes that in some circumstances there may be matters that undermine the validity of a judgment or the legality of a defendant's confinement or sentence, but which are not apparent from the record on appeal, and that such circumstances may provide a basis for a collateral challenge to the judgment through a writ of habeas corpus." A variety of procedural rules have been recognized that govern such writ relief, including the requirement that claims raised in a habeas corpus petition must be timely filed. (*In re Robbins*, *supra*, at p. 778.) Unjustified delay in presenting habeas corpus writ petition claims bars consideration of the merits of the petition. (*In re Clark* (1993) 5 Cal.4th 750, 759; *People v. Miller* (1992) 6 Cal.App.4th 873, 881-882.)

In order "to avoid the bar of untimeliness with respect to each claim, the *petitioner* has the burden of establishing (i) absence of substantial delay, (ii) good cause for the

delay, or (iii) that the claim falls within an exception to the bar of untimeliness." (*In re Robbins*, *supra*, 18 Cal.4th at p. 780.)

Here, regardless of any delay, the trial court properly granted defendant's writ petition challenging defendant's 2006 sentence, because the juvenile carjacking adjudication does not qualify as a strike. Writ relief "will always issue to review an invalid sentence, when, without the redetermination of any facts, the judgment may be corrected to accord with the proper determination of the circumstances." (*In re Estrada* (1965) 63 Cal.2d 740, 750.) As in the instant case, writ relief has been issued "where the trial court has sentenced a defendant to a term in excess of the maximum provided by law." (*Ibid.*)

Furthermore, the record shows good cause for defendant delaying filing his writ petition until January 5, 2018. Defendant was not told the juvenile carjacking strike was invalid, and had no way of knowing this until after the CDCR notified the public defender's office on December 27, 2016, that defendant's sentence appeared to be improper, and the public defender thereafter reviewed the matter and concluded on February 1, 2017, that defendant's juvenile carjacking adjudication did not qualify as a strike. It was not until defendant was advised of this that defendant had any reason to know the strike was improper and take action to correct it.

On March 23, 2017, defendant requested the SBSC to modify his sentence. When the trial court heard the matter on July 21, 2017, after numerous continuances, the parties and the court agreed defendant should proceed by filing a writ petition. After *Gallardo*

35

was decided in December 2017, defendant filed his writ petition in the trial court on January 5, 2018.

Under these circumstances, defendant moved reasonably expeditiously in challenging the juvenile carjacking strike. The record shows that the significant delay in seeking such collateral relief was justified. Although some of the relevant reporter's transcripts were no longer available, this was not due to any fault on defendant's part.

Although the unavailable reporter's transcripts might have been helpful in reviewing the court proceedings leading to defendant's writ petition, the People have not shown any prejudice by their absence. Defendant remains convicted of all of the charged crimes in the SBSC case based on his guilty plea in that case, and it is highly unlikely that any of the missing transcripts and notes would have made any difference in the trial court's ruling on defendant's writ petition.

VI.

JURISDICTION OVER LOS ANGELES

AND ORANGE COUNTY CASES

The People contend the SBSC exceeded its jurisdiction under Penal Code section 1170.1 by vacating the juvenile carjacking strikes in defendant's Los Angeles and Orange County cases (LASC case No. VA076709 and OCSC case No. 03NF1824). We disagree. The SBSC had authority to vacate the juvenile carjacking strike from those cases, as it did in the SBSC case, because, at the time of resentencing in the SBSC case, the court was required to impose a single aggregate sentence on all three cases. In doing so, the

36

SBSC was required to vacate the juvenile carjacking strike in each of the three cases because the juvenile carjacking adjudication did not qualify as a strike.

When the trial court granted habeas writ relief, the SBSC was thereafter required to consider the entire sentencing scheme and reconsider all sentencing choices, as to all pending determinate cases.  (*People v. Hill* (1986) 185 Cal.App.3d 831, 834.)  This is "because an aggregate prison term is not a series of separate independent terms, but one term made up of interdependent components. The invalidity of one component infects the entire scheme."  (*Ibid.*)

"[Penal Code] [s]ection 1170.1 generally governs the calculation and imposition of a determinate sentence when a defendant has been convicted of more than one felony offense."  (*People v. Williams* (2004) 34 Cal.4th 397, 402.)  Under Penal Code section 1170.1, subdivision (a), "Except as otherwise provided by law, and subject to [Penal Code] [s]ection 654, when any person is convicted of two or more felonies, *whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same or by a different court*, and a consecutive term of imprisonment is imposed under [Penal Code] [s]ections 669 and 1170, the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements for prior convictions, prior prison terms, and [Penal Code] [s]ection 12022.1."  (Italics added.)

California Rules of Court, rule 4.452 further provides:  "If a determinate sentence is imposed under [Penal Code] section 1170.1[,] [subdivision] (a) consecutive to one or

more determinate sentences *imposed previously in the same court or in other courts*, *the court in the current case must pronounce a single aggregate term*, as defined in [Penal Code] section 1170.1[,] [subdivision] (a), stating the result of combining the previous and current sentences.  In those situations:  [¶]  (1) The sentences on all determinately sentenced counts in all of the cases on which a sentence was or is being imposed must be combined as though they were all counts in the current case." (Italics added.)  In doing so, status enhancements can be applied only once when imposing an aggregate sentence. (*People v. Edwards* (2011) 195 Cal.App.4th 1051, 1057, 1060; *People v. Williams*, *supra*, 34 Cal.4th at p. 402.)  The juvenile carjacking strike is a status enhancement.  (*People v. Edwards*, *supra*, at p. 1057.)

In the instant case, after the trial court granted writ relief, the SBSC was required to impose a single aggregate determinate sentence for the SBSC, LASC, and OCSC cases.  Because the original sentences in each of those cases included sentencing on the juvenile carjacking strike, which did not qualify as a strike, the SBSC acted within its jurisdiction to vacate the invalid strike in all three cases.  Upon properly finding the juvenile carjacking strike did not qualify as a strike in the SBSC case, the trial court properly made the same finding as to the same strike in the other two cases.  To do otherwise would have resulted in inconsistent findings and sentencing on the same juvenile carjacking strike, where the record established that the strike was invalid.

We therefore reject the People's contention that SBSC did not have jurisdiction to vacate the juvenile carjacking strike in the LASC and OCSC cases when imposing an aggregate sentence on the three cases.

## VII.

## DISPOSITION

The writ petition order and judgment are affirmed.

CERTIFIED FOR PUBLICATION

CODRINGTON

J.

I concur:

MILLER

   Acting P. J.

[*In re Brandon Craig Brown*, E071401]

MENETREZ, J., Dissenting.

I believe that *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*) does not apply

retroactively to cases that are already final on appeal. Division Seven of the Court of

Appeal, Second Appellate District recently reached the same conclusion. (*In re Milton*

(2019) 42 Cal.App.5th 977, 982.) I therefore respectfully dissent.

In order to determine whether *Gallardo* is retroactive, we first need to identify the

applicable retroactivity standard. Just over one year ago, in a unanimous, published

opinion, our division held that for purposes of habeas corpus petitions in California

courts, the retroactivity of California appellate court decisions must be evaluated under

the state law standard of *In re Johnson* (1970) 3 Cal.3d 404 (*Johnson*), not the federal law

standard of *Teague v. Lane* (1989) 489 U.S. 288. (*In re Thomas* (2018) 30 Cal.App.5th

744, 749 (*Thomas*).) I am not aware of any reason for us to depart from our recent

holding in *Thomas*. No party has offered one,[1] and the majority does not articulate one.

We should therefore follow *Thomas* and evaluate the retroactivity of *Gallardo* under the

state law standard established in *Johnson*. (*Estate of Sapp* (2019) 36 Cal.App.5th 86,

109, fn. 9.)

The next question is whether *Gallardo* created a new rule for purposes of

retroactivity analysis. It did, because it overruled *People v. McGee* (2006) 38 Cal.4th 682

---

[1] The appellant's opening brief and the respondent's brief were filed before we
decided *Thomas*, *supra*, 30 Cal.App.5th 744. The appellant's reply brief discusses
*Thomas* and does not urge us to depart from it. At oral argument as well, no party
expressed any criticism of *Thomas*.

1

(*McGee*).  (*Gallardo*, *supra*, 4 Cal.5th at p. 125 ["We disapprove [*McGee*] insofar as it suggests that the trial court's factfinding was constitutionally permissible"]; see *Thomas*, *supra*, 30 Cal.App.5th at p. 761 [an appellate decision announces a new rule if it "explicitly overrule[s] a precedent of the California Supreme Court"].)  And the new rule is procedural, not substantive, because it neither "alters the range of conduct or the class of persons that the law punishes" nor "modifies the elements of [an] offense."  (*In re Martinez* (2017) 3 Cal.5th 1216, 1222.)

Brown argues that the *Gallardo* rule is neither new nor procedural, but his arguments are meritless.  He contends that *Gallardo* is not new because it was dictated by *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*).  But the *Gallardo* rule is new regardless of whether it was dictated by *Apprendi*, because *Gallardo* overruled *McGee* (which also postdated *Apprendi*).  (*In re Lucero* (2011) 200 Cal.App.4th 38, 45; *Thomas*, *supra*, 30 Cal.App.5th at p. 761.)  And Brown presents the following argument (and others like it) that the *Gallardo* rule is substantive:  "*Gallardo* alters the range of conduct or class of persons that the law punishes by making increased punishment for habitual offenders unavailable under any procedure for persons whose prior guilty pleas or verdicts do not themselves necessarily include facts required for habitual offender punishment."  The argument fails because a procedural rule does not become substantive merely by being rewritten as a rule about the class of persons to whom the procedural rule applies.  The *Gallardo* rule is essentially an evidentiary rule—it limits the sources on which a sentencing judge can rely in determining whether a prior conviction qualifies as a

strike.  It does not alter the elements of any offense or the range of conduct or class of persons that the law punishes.  Rather, it alters the procedure by which sentencing judges determine which persons are in which classes.

Given that *Gallardo* creates a new rule and is procedural, in order to determine whether the rule applies retroactively under *Johnson* we must consider "(a) the purpose to be served by the new rule, (b) the extent of reliance by law enforcement authorities on the old rule, and (c) the effect on the administration of justice of applying the new rule retroactively.  (*Johnson*, *supra*, 3 Cal.3d at p. 410.)  That is, we weigh the new rule's importance and impact against the disruption that would be caused by applying the new rule to final cases where law enforcement, including prosecutors, relied on the old rule in investigating and prosecuting those cases originally." (*Thomas*, *supra*, 30 Cal.App.5th at p. 763.)

The *Johnson* standard is somewhat vague and difficult to apply.  (See *Thomas*, *supra*, 30 Cal.App.5th at pp.756-758 [discussing criticism of *Linkletter v. Walker* (1965) 381 U.S. 618, on which *Johnson* was based].)  But the case law does provide some useful guideposts.  "If the new rule aims to deter future misconduct or to define procedural rights merely incidental to a fair determination of guilt or innocence, it will generally not be given retroactive effect.  [Citations.]  On the other hand, if a decision goes to the integrity of the factfinding process [citation], or 'implicates questions of guilt and innocence' [citation], retroactivity is the norm." (*Thomas*, at p. 763.)

*Gallardo* is merely an application of the rule, first announced in *Apprendi*, that "any fact, other than the fact of a prior conviction, that increases the statutorily authorized penalty for a crime must be found by a jury beyond a reasonable doubt." (*Gallardo*, *supra*, 4 Cal.5th at p. 123.) The *Apprendi* rule itself derives from the right to jury trial under the Sixth Amendment to the United States Constitution. (*Gallardo*, p. 123.) And the United States Supreme Court has explained that the evidence concerning the relative accuracy of judges and juries as factfinders is "equivocal." (*Schriro v. Summerlin* (2004) 542 U.S. 348, 356 ["for every argument why juries are more accurate factfinders, there is another why they are less accurate"].)

Moreover, the effect of *Gallardo* is to limit the sources on which a sentencing judge may rely in determining whether a prior conviction qualifies as a strike—the judge must look only to the record of conviction and not to extraneous sources such as preliminary hearing transcripts or probation reports (as in the instant case). (*Gallardo*, *supra*, 4 Cal.5th at p. 137.) Because *Gallardo* thus shrinks the universe of evidence that can be used to determine that prior convictions were strikes, it is reasonable to infer that, as a result of *Gallardo*, fewer prior convictions will be found to be strikes. It is theoretically possible that some erroneous factfinding will thereby be avoided. That is, it is possible that there are cases in which a prior conviction that is not found to be a strike under *Gallardo* would have *erroneously* been found to be a strike under *McGee*. But the opposite result would appear to be considerably more likely. That is, the effect of *Gallardo*'s limitation on the evidence available to sentencing judges might actually be to

4

*increase* the risk of erroneous factfinding at sentencing, because a sentencing judge might be prevented from determining that a prior conviction was a strike when, in fact, it was.

Accordingly, I do not see how *Gallardo* can be characterized as a decision that goes to the integrity of the factfinding process or implicates questions of guilt or innocence in a manner that warrants retroactive application. Rather, it appears to define procedural rights that are merely incidental to a fair determination of guilt or innocence. *Gallardo* consequently would not appear to be retroactive.

More detailed consideration of the *Johnson* factors supports that conclusion. In evaluating the first factor, we consider the purpose of the new rule and "its relationship to the reliability and integrity of the factfinding process at trial." (*Thomas*, *supra*, 30 Cal.App.5th at p. 764.) The purpose of the *Gallardo* rule, like the purpose of the *Apprendi* rule from which it derives, is to respect the Sixth Amendment right to jury trial. The Supreme Court has described the constitutional right to trial by jury as "'the great bulwark of [our] civil and political liberties'" and as affording protection "'against a spirit of oppression and tyranny on the part of rulers.'" (*Apprendi*, *supra*, 530 U.S. at p. 477.) But as I have already noted, the high court has rejected the suggestion that factfinding by juries is inherently more accurate than factfinding by judges (*Schriro v. Summerlin*, *supra*, 542 U.S. at p. 356), and *Gallardo* might actually have a detrimental rather than beneficial effect on the accuracy of judicial factfinding at sentencing. Thus, insofar as there is a connection between the *Gallardo* rule and avoiding wrongful convictions or promoting accurate factfinding, it would not appear to be a strong one.

5

The second and third factors are, respectively, the extent of law enforcement's reliance on the old rule and the effect on the administration of justice of applying the new rule retroactively. (*Thomas*, *supra*, 30 Cal.App.5th at p. 763.) Both factors weigh heavily against retroactive application of *Gallardo*.

In the 11 years from *McGee* to *Gallardo*, California lawyers and lower courts universally and reasonably relied on *McGee*, because it was a decision of the California Supreme Court and hence binding on all lower courts. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) And retroactive application of *Gallardo* could have an enormously disruptive and costly impact on the administration of justice by licensing challenges to sentences imposed in countless felony cases resolved by plea, like Brown's. In fiscal year 2017-2018, for example, California courts resolved 156,149 felony cases before trial, of which 66 percent (or just over 100,000) resulted in felony convictions. (Judicial Council of California, 2019 Court Statistics Report, p. 69.) It is reasonable to infer that if *Gallardo* were applied retroactively, the sentences rendered vulnerable to attack would number in the hundreds of thousands.

On balance, then, I see no way of avoiding the conclusion that *Gallardo* is not retroactive under *Johnson*. The purpose of the *Gallardo* rule is (at most) weakly connected to avoidance of wrongful convictions, the reliance by law enforcement on the

6

old rule was universal, and the negative impact of retroactivity on the administration of justice is likely to be huge.[2]

In addition to analyzing the retroactivity issue under *Johnson*, the majority also appears to argue that *Gallardo* applies retroactively here because (1) a legally unauthorized sentence may be challenged at any time, and (2) Brown's sentence is legally unauthorized under *Gallardo*. (Maj. opn., *ante*, p. 17 [*Gallardo* "applies retroactively here because defendant's sentence constitutes an unauthorized sentence as to his juvenile carjacking strike"].) The argument is obviously circular. When Brown was sentenced, his sentence was legally authorized under then-existing California law. If *Gallardo* is not retroactive, then his sentence is still legally authorized. We cannot apply *Gallardo* retroactively to render the sentence legally unauthorized *and then infer from that lack of legal authorization that* Gallardo *must be retroactive.*

Because I conclude that *Gallardo* is not retroactive, I would reverse the trial court's order with directions to deny Brown's petition. I therefore respectfully dissent.

MENETREZ
J.

---

**2** Were we to apply the federal standard, we would have to conclude that *Gallardo* is not retroactive under *Teague v. Lane*, *supra*, 489 U.S. 288. The United States Supreme Court has held that *Ring v. Arizona* (2002) 536 U.S. 584, 603-609—which applied *Apprendi* to conclude that aggravating factors necessary for imposition of the death penalty must be found by a jury, not by a judge—is not retroactive. (*Schriro v. Summerlin*, *supra*, 542 U.S. at p. 358.) It is impossible to reconcile that holding with the conclusion that *Gallardo* is retroactive under *Teague v. Lane*, *supra*, at p. 288.